(No. 97984.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ERNEST J. NORMAND, Appellant.

*Opinion filed June 3, 2005.*

G. Joseph Weller, Deputy Defender, and Mark G. Levine, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Doug Floski, State's Attorney, of Oregon (Gary Feinerman, Solicitor General, and Linda D. Woloshin and Jonathan J. Silbermann, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

In August 2000, defendant, Ernest J. Normand, was arrested and charged with three counts of possession of child pornography. 720 ILCS 5/11—20.1(a)(6) (West 2000). A computer, related equipment, computer disks,

and a box of Polaroid photographs were taken from defendant's home pursuant to a search warrant. Defendant was initially charged with possessing three Polaroid photographs depicting nude and sexualized images of defendant's then 16-year-old former girlfriend, Sheri F. In November 2000, a grand jury indictment was issued, charging defendant with four additional counts of possession of child pornography. These charges were based on images contained on some of the seized computer disks, which depicted what appeared to be unidentified minors in sexualized poses or engaging in sexual activity. The images were converted into photographs and were admitted into evidence. In April 2002, following a bench trial in the circuit court of Ogle County, defendant was convicted of six counts of possession of child pornography. The trial court sentenced him to two years' probation. The appellate court affirmed. 345 Ill. App. 3d 736. We granted defendant leave to appeal. 177 Ill. 2d R. 315.

The section of the child pornography statute under which defendant was charged states:

"(a) A person commits the offense of child pornography who:

\* \* \*

(6) with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child or institutionalized severely or profoundly mentally retarded person whom the person knows or reasonably should know to be under the age of 18 or to be an institutionalized severely or profoundly mentally retarded person, engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection[.]" 720 ILCS 5/11—20.1(a)(6) (West 2000).

The definition of "child" states:

"(f) Definitions. For the purposes of this Section:

\* \* \*

(7) 'Child' includes a film, videotape, photograph, or other similar visual medium or reproduction or depic-

tion by computer that is, or appears to be, that of a person, either in part, or in total, under the age of 18, regardless of the method by which the film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer is created, adopted, or modified to appear as such. 'Child' also includes a film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer that is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer is of a person under the age of 18." 720 ILCS 5/11—20.1(f)(7) (West 2000).

In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389 (2002), the United States Supreme Court invalidated two sections of the Child Pornography Prevention Act of 1996 (CPPA). One section prohibited any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture that is or appears to be of a minor engaging in sexually explicit conduct. The other section defined child pornography to include any sexually explicit image that, *inter alia*, conveys the impression that it depicts a minor engaged in sexually explicit conduct. The Supreme Court invalidated these two sections because the "appears to be" and "conveys the impression" language targeted virtual child pornography, *i.e.*, realistic images of children created entirely by computer software that were not of actual children and, therefore, not illegal. The Court found those sections of the CPPA to be overbroad and unconstitutional. *Ashcroft*, 535 U.S. at 256, 152 L. Ed. 2d at 425, 122 S. Ct. at 1405.

In *People v. Alexander*, 204 Ill. 2d 472 (2003), this court addressed a similar provision in the Illinois child pornography statute. Like the statute in *Ashcroft*, the Illinois statute contained the "appears to be" and the

"conveys the impression" language in defining the term "child." 720 ILCS 5/11—20.1(f)(7) (West 2000). We found these definitions of "child" to be unconstitutional because they were indistinguishable from the language in the federal CPPA invalidated in *Ashcroft*. We struck only subsection (f)(7), finding that the rest of the statute could stand without the unconstitutional provisions. *Alexander*, 204 Ill. 2d at 483-84. This decision was issued after defendant filed his initial brief in the appellate court.

In the appellate court, defendant argued that the convictions based on the computer images must be reversed in light of the Supreme Court's decision in *Ashcroft* and that the application of the Illinois statute to his conduct was unconstitutional because there was no proof that actual children were used in the making of the computer images. The appellate court rejected this argument, holding that the State need not prove that "the image is not something other than it plainly appears to be through some means other than an examination of the image itself." 345 Ill. App. 3d at 741.

Before this court, defendant argues that (1) the trial court erroneously relied on the statutory definition of "child" that was later declared unconstitutional by this court in *Alexander*, (2) the State failed to authenticate the photographs admitted into evidence to prove that they depicted real children, and (3) the evidence was insufficient to convict him.

The State argues that defendant has waived his arguments. He did not object to the admission of the computer photographs into evidence. He did not argue to the trial court that the State had failed to establish that the images were of actual children. Defendant did not raise any such contention in his posttrial motion, nor did he argue in his motion that the trial court failed to find the minors in the photographs to be real children. To preserve an er-

ror for review, a defendant must make an objection at trial and include the error in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Failure to follow this procedure results in waiver of the issues on appeal. *People v. Phelps*, 211 Ill. 2d 1, 10-11 (2004); *People v. Macri*, 185 Ill. 2d 1, 44 (1998). We note, however, that the rule of waiver is an admonition to the parties and not a limitation on the jurisdiction of this court. *In re W.C.*, 167 Ill. 2d 307, 323 (1995). Our decision in *Alexander* was not filed until well after defendant's trial. Therefore, we decline to find waiver and will address defendant's contentions on their merits.

Our discussion relates only to the photographs obtained from the computer disks seized during the search of defendant's apartment. The photographs were taken from two floppy computer disks and one zip disk. The only objection to their admission into evidence that defense counsel posed was as to the chain of custody of one photograph. The trial court overruled the objection. Sergeant James Wilcox, who assisted in the search of defendant's apartment, testified that he spoke with defendant as other officers were performing the search. Defendant told Wilcox that he had been collecting pornography for the previous five years. He told Wilcox that a child was someone under 18 years of age. He downloaded the pornographic images from the Internet and had saved thousands of such images over the years. When asked how he knew that an image portrayed a person under age 18, defendant said he could tell by looking at the photograph. The size and weight of the person and the development of their genitalia are factors defendant would look at to judge the age of the person. He would separate out the images of children from those of adults and transfer them to removable disks titled "younger or young stuff." Defendant told Wilcox he knew child pornography was illegal and that defendant, in his

words, "fucked up" by not getting rid of it. Defendant also told Wilcox that the computer located inside the front door (the computer that was seized) was his computer and he used it to download pornography from the Internet.

Sheri F., defendant's former girlfriend, testified that she and defendant broke off their relationship in October 1999. Prior to that time, she had seen several of their friends use defendant's computer to check their e-mail. Defendant would watch them while they did this. Sheri F. did not see the friends do anything else on defendant's computer. She had occasion to see defendant using the computer. While he was doing so, she saw nude women and small children displayed on the computer monitor. Sometimes the children were clothed and sometimes they were nude and were engaged in sexual acts. Sheri F. identified defendant's handwriting on the zip disk and floppy disks from which the pornographic images were retrieved. The handwriting on the zip disk said, "Ernest Special Disk."

Defendant testified in his own behalf. He stated that he owned the computer seized in the search of his apartment. He lived with a roommate, who had his own computer. During the time he lived in the apartment, more than 10 of his friends would use the computer when they were there for word processing, for Internet access, to check their e-mail, and to play games. He placed no restrictions on others' use of his computer. It was not password protected. Defendant testified that not all of the zip disks and floppy disks seized in the search belonged to him. Although defendant downloaded about 20,000 pornographic images over a five-year period, he did not seek to download child pornography. Most of the time, he would receive the images compressed into zip files which could not be viewed until they were on his computer and were unzipped. Once he looked at the im-

ages, he would delete any that were corrupted or undesirable. Sometimes, he deleted images of children. However, he did not go through each zip file he received to verify that no child pornography was in it.

Defendant denied telling Wilcox that he had child pornography on his computer. When he told Wilcox that he had "fucked up," he was referring to the fact that, of the thousands of images he downloaded, there might have been some of an illegal nature that he did not review and discard. Defendant denied naming any disk or file "younger" or "young fuck." Those names were given to the files before he downloaded them in compressed format. Defendant conceded that two of the disks admitted into evidence labeled "Ernest Special Disk" and "Classics/s-w-o-t-l" were his and contained his handwriting. The other disk contained only the number "8" and he was not certain that was his handwriting. When Wilcox asked defendant if he had any child pornography on his computer, defendant said not to his knowledge. Defendant denied telling Wilcox that he would sort through the images and if persons in the images appeared to be under age 18, he would save the images to a separate disk or folder titled "younger." He told Wilcox that if he saw any images that were questionable, he would put them in a folder, view them and delete them.

During his closing argument to the trial court, defense counsel challenged the State's evidence as to defendant's knowing possession of the images taken from the computer disks that were admitted into evidence. It was counsel's position that the fact that defendant had other child pornography on his computer was insufficient to prove his knowing possession of the images in question. Counsel also noted defendant's testimony concerning the other people who had access to his computer. Counsel further argued that the State had not proved beyond a reasonable doubt that the individuals in one of

the photographs admitted into evidence were under the age of 18, based on their appearance.

The trial judge rendered his verdict from the bench. Referring to the four photographs taken from the computer disks, the judge described the issue as whether defendant possessed the images from which the photographs came with knowledge of the nature of the images. The judge noted that defendant admitted he downloaded thousands of pornographic images, that some of those images may have been of children, and that defendant would delete the child pornography if he found it, but that he did not check every image. The judge also noted the testimony of Wilcox as to his conversation with defendant in which defendant admitted that there was child pornography in his apartment, that he knew it was illegal and he should have gotten rid of it. The judge found the testimony of Wilcox and Sheri F. to be convincing and found defendant guilty on all but the last count of the indictment. On that count, the judge found reasonable doubt as to the ages of the individuals in the photograph and he found defendant not guilty of that count.

Defendant filed a motion for new trial and a motion to reconsider the verdict. Both motions alleged several grounds for a new trial, but no issue was raised as to the State's failure to prove or the trial court's failure to find that the individuals portrayed in the photographs obtained from the computer disks were of actual children.

Defendant first argues that the verdict is unreliable because the trial court relied on a statutory definition that was later declared unconstitutional and, consequently, did not find that the individuals in the computer photographs were actual children. Defendant asserts that the court relied on the "appears to be" definition of "child" contained in subsection (f)(7) of the child pornography statute and that the judge specifically referred to that language in making his finding of guilt.

We reject this argument. We note that defendant explained to Wilcox that he could tell an individual in a photograph was under the age of 18 by looking at the photograph itself, noting particularly the individual's height, weight, and the development of their genitalia. There was no suggestion by anyone that the individuals depicted in the photographs were anything other than real children. In fact, the trial court did not, as defendant claims, rely on the "appears to be" definition of "child" in finding defendant guilty. The reference to the "appears to be" language was made during defense counsel's closing argument, in which he challenged the age of the individuals in one of the computer photographs admitted into evidence. There was no discussion about whether the individuals in any of the photographs were real children.

In rendering its verdict, the court stated:

"The other issue that was raised [the first issue being knowing possession] is the issue of age. That is whether or not as to these—particularly it was raised as to count seven, Exhibit 15, whether or not the age of the persons or person that is found in that photograph was under the age of 18 or could be found to have been. I don't think there could be any argument and there was none made that as to counts four, five and six, which are Exhibits 13, 14, and 16, that the children, the girls depicted in those photographs, are under the age of 18 and that they are engaged in the type of sexual acts which are prohibited by the statute. And I do find that as to counts four, five, and six, the Defendant has been proven guilty beyond a reasonable doubt.

As to seven, that's photograph Exhibit 15, I do find that there is a reasonable doubt as to age of the participants in that photograph. And I will find the Defendant not guilty under count seven."

Clearly, the trial judge believed the individuals depicted in the photographs to be actual children. He referred to them as "children," "girls," "participants," and "persons." We conclude that the verdict is not unreli-

able and that the trial court did not rely on the unconstitutional definition of "child."

Defendant next argues that the photographs taken from the computer disks were improperly admitted into evidence without the proper foundation. Defendant further argues that if the photographs themselves were the evidence that actual children were used to produce them, it was error for the trial court to admit the images without requiring authentication of them as fairly and accurately representing the matter depicted. The result, according to defendant, is that the evidence was insufficient to convict him of possessing the photographs. We note that defendant has also argued that the State failed to prove an essential element of the offense, *i.e.*, that actual children were used in making the computer images that defendant was convicted of possessing. Defendant's argument regarding the authentication of the computer photographs is, essentially, a challenge to the sufficiency of the evidence, since defendant's main claim in this appeal is that some additional proof was required, beyond the photographs themselves, to establish that actual children were depicted. Accordingly, we turn to defendant's argument that he was not proved guilty beyond a reasonable doubt.

When reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

In *Alexander*, we held that "child" means "actual child." The statute requires that the defendant "knows or reasonably should know" that the child depicted is under the age of 18. We noted that in the context of

virtual child pornography, the State could never satisfy the *scienter* requirement because a virtual child is ageless. Accordingly, we held that the statute prohibits "making and possessing sexually explicit computer depictions of any actual child under 18 years of age." *Alexander*, 204 Ill. 2d at 486. Thus, the State was required to prove beyond a reasonable doubt that the sexually explicit images possessed by defendant depicted actual children. The only evidence that actual children were depicted by the photographs admitted at defendant's trial were the photographs themselves.

Defendant cites *United States v. Hilton*, 363 F.3d 58 (1st Cir. 2004), in support of his argument that there must be some proof in addition to the images themselves to establish that real children are depicted. In *Hilton*, a pre-*Ashcroft* prosecution, the defendant was charged under the federal CPPA with possession of child pornography that had traveled between states or between countries. The images were taken from backup disks of the defendant's computer hard drive. An expert testified as to the age of the children, using the Tanner Scale which provides a basis for estimating a person's stage of physiological development. In the expert's opinion, nine of the images depicted children from preschool age to young teenagers. After *Ashcroft* was decided, the defendant filed a petition for postconviction relief, alleging that the government did not prove that the children in the images were real. The court of appeals affirmed the decision of the district court vacating defendant's conviction. The court rejected the government's argument that the expert's testimony using the Tanner Scale sufficed to prove that the children were real, finding that a virtual pornographer, with the aid of technology, would be able to produce images that would mimic the indicators of age used by the Tanner Scale. The court disagreed with the argument that as a matter of common sense, the district

court found, or must have found, that the images represented real children. Rather, the State must present relevant evidence in addition to the images themselves to establish that they depict real children. *Hilton,* 363 F.3d at 66.

*Hilton* does not support defendant's argument. The court of appeals subsequently withdrew its opinion and issued another opinion in its place. *United States v. Hilton,* 386 F.3d 13 (1st Cir. 2004). In that decision, the court did not mention its withdrawn opinion. Although the court again vacated the defendant's convictions, it did so because the district court did not make a finding of fact that the images depicted real children. There is no mention of the prior opinion's requirement that the State produce evidence in addition to the computer images to carry its burden of proof that real children were depicted. *Hilton,* 386 F.3d at 18-19.

Other federal courts of appeal have concluded that the government need not introduce evidence other than the pornographic images themselves. See *United States v. Slanina,* 359 F.3d 356, 357 (5th Cir. 2004) (neither expert testimony nor additional evidence is required to prove downloaded images are of real children); *United States v. Kimler,* 335 F.3d 1132, 1142 (10th Cir. 2003) (concluding that *Ashcroft* did not establish a requirement that, absent direct evidence of identity, an expert must testify that the unlawful image is of a real child; juries are still capable of distinguishing between real and virtual images and admissibility remains within the sound discretion of the trial judge); *United States v. Hall,* 312 F.3d 1250, 1260 (11th Cir. 2002) (although jury was instructed on pre-*Ashcroft* definition of "child," an examination of the pictures viewed by the jury demonstrates that the children depicted in the images were real and that a reasonable jury could not have found that the images were of virtual children); *United States v. Vig,* 167 F.3d

443, 450 (8th Cir. 1999) (rejecting argument that technology was available to produce pornographic images without using real children; government was not required to negate what is merely unsupported speculation).

Unlike photographs used as demonstrative evidence, the photographs taken from the computer images here were themselves the evidence of defendant's offense. Accordingly, the question is whether the State proved beyond a reasonable doubt that the children depicted in the images were real children. Although, following our decision in *Alexander*, the State must prove that real children were used to create pornographic images, it does not follow that *Alexander* placed a higher burden of proof on the State than previously existed. Defendant's argument assumes that computer imaging technology has advanced to the stage where pornographic images of children may be produced without using real children. This is the so-called virtual child. Defendant did not argue in the trial court nor does he argue in this court that such technology is so widely available that its use must be affirmatively negated in every case.

This court acknowledged in *Alexander* the findings of Congress in enacting the CPPA, specifically, the finding that " ' "new photographic and computer imagining [*sic*] technologies make it possible to produce by electronic, mechanical, or other means, visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaging in sexually explicit conduct." ' " *Alexander*, 204 Ill. 2d at 477-78, quoting 18 U.S.C. § 2251, Congressional Findings, Note (5) (2000), quoting Pub. L. 104—208, 110 Stat. 3009—26 (1996). However, the fact that such technology is available does not mean that it is necessarily being widely used by those who produce pornographic images of children. Rather, we find more

persuasive comments made by the Supreme Court in *Ashcroft*:

> "The Government next argues that its objective of eliminating the market for pornography produced using real children necessitates a prohibition on virtual images as well. Virtual images, the Government contends, are indistinguishable from real ones; they are part of the same market and are often exchanged. In this way, it is said, virtual images promote the trafficking in works produced through the exploitation of real children. The hypothesis is somewhat implausible. *If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice.*"

(Emphasis added.) *Ashcroft*, 535 U.S. at 254, 152 L. Ed. 2d at 423, 122 S. Ct. at 1403-04.

The italicized portion of the quote has relevance to defendant's argument. If child pornographers had easy access to the technology to produce virtual child images that are indistinguishable from images using real children, no reason would exist to use real children. The risk of prosecution and prison sentences for using real children contrasts sharply with the legality of using virtual child images. Few pornographers would be willing to take that risk if a legal means of producing the same type of images existed. Yet, if virtual child pornography exists, it has not been well publicized. Given the substantial market for child pornography on the Internet, it stands to reason that such a radical development would not go unnoticed, especially in legal and law enforcement circles. Therefore, we are not convinced that this technology is so widely available that the State must be required as a matter of law to produce evidence in addition to the images themselves to carry its burden of proof.

For the reasons stated, we conclude that a trier of fact is capable of determining whether real children were used in pornographic images simply by viewing the im-

ages themselves. In this particular case, after viewing the images ourselves, we find that any trier of fact could conclude beyond a reasonable doubt that the photographs depicted actual children, and that defendant knowingly possessed the images. Accordingly, viewing the evidence in the light most favorable to the prosecution, we hold that the evidence was sufficient to convict defendant of possession of child pornography.

For the reasons stated, the judgment of the appellate court is affirmed.

*Appellate court judgment affirmed.*