2007 WY 201

**Raymond Paul JONES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 06–243.

Supreme Court of Wyoming.

Dec. 18, 2007.

Representing Appellant: Tina Kerin, Appellate Counsel; and David E. Westling, Senior Appellate Counsel, Wyoming Public Defender Program, Cheyenne, Wyoming. Argument by Mr. Westling.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Dana J. Lent, Assistant Attorney General. Argument by Ms. Lent.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶1] Appellant, Raymond Paul Jones (Jones), was charged with seven counts of violating Wyo. Stat. Ann. § 6–4–303(a)(ii)(B) (LexisNexis 2007) ("sexual exploitation of children"). Jones entered into a conditional plea agreement with the State wherein he pled guilty to two of the seven counts. The conditions associated with that plea included one permitting Jones to challenge the constitutionality of the statute under which he was convicted, on the basis that it was vague and overbroad and brought within its reach material protected by the First Amendment. We will affirm.

## ISSUES

[¶2] Jones raises this issue:

Wyo. Stat. Ann. § 6–4–303(a)(ii)(B) is unconstitutional on its face and in its application toward [Jones].

The State articulates the issue as follows:

Is Wyo. Stat. Ann. § 6–4–303(a)(ii)(B) vague on its face or in its application to [Jones's] case, and did the district court err in ruling that it was not unconstitutionally overbroad?

In his reply brief, Jones argues:

I. Did [Jones's] provision of a factual basis for his conditional guilty plea constitute an admission which bars his challenge to the constitutionality of Wyo. Stat. Ann. § 6–4–303(a)(ii)(B)?

## FACTS AND PROCEEDINGS

[¶3] Although the facts are not of any real significant consequence to the resolution of the issue raised in this case, we will provide a few details for the purpose of providing context for the matters we will consider in this opinion. Jones was looking for a place to reside and a friend invited him to stay at his house and share the rent. That relationship deteriorated and the co-tenant

moved Jones's possessions out of the house and into the garage. During that process, the co-tenant found what he perceived to be child pornography and so he called the police to investigate.

[¶ 4] After the police had arrested Jones on unrelated, unserved arrest warrants, they obtained consent from Jones to search his rented room. Later, the police also obtained a search warrant to continue and to expand that search. During the search of Jones's property, the police found additional pornographic material. That investigation led to the charges at issue here.

[¶ 5] Initially, Jones entered a plea of not guilty. At a change of plea hearing held on July 7, 2006, Jones opted to change his plea to guilty on Counts I and VII and all other counts would be dismissed. There was no agreement as to sentence, other than that the sentences would be concurrent. In addition, it was agreed that no further charges would be brought against Jones in connection with this matter. Finally, it was noted that "... oh, and that it's a conditional plea allowing the defense to appeal the issues related to the search and seizure, constitutionality of the statute."

## STANDARD OF REVIEW

[¶ 6] Jones's challenge to the constitutionality of the statute in dispute presents a question of law that we review *de novo. Rutti v. State*, 2004 WY 133, ¶ 9, 100 P.3d 394, 400 (Wyo.2004). Although Jones admitted to the gravamen of the charges against him, he reserved the right to appeal only the constitutionality of the statute at issue as it pertains to persons "virtually indistinguishable from a child." He asserts that that language is both "vague" and "overbroad" as those two terms are used in First Amendment jurisprudence.

[¶ 7] We will hereinafter set out verbatim our discussion of the applicable standard of review from our *Rutti* decision, in order that our jurisprudence in this regard might remain consistent and clear. In addition, that material will set the stage for a discussion of amendments that the Wyoming Legislature made to our sexual exploitation of children statute, after *Rutti* was published, and which we deemed prudent at the time we decided *Rutti.* The amendments made by the Wyoming Legislature are similar to amendments made to the parallel federal statute, which has also come under close scrutiny for its alleged violation of the First Amendment. In light of the amendments to the Wyoming statutes, in the instant case, the district court held that Wyoming's revised statute was not unconstitutionally vague or overbroad, although this matter was not very well developed in the trial court.

When analyzing an overbreadth challenge under the First Amendment:

The general rule is that one who alleges unconstitutionality bears a heavy burden and must clearly and exactly show the unconstitutionality beyond any reasonable doubt. *Pauling v. Pauling,* 837 P.2d 1073, 1076 (Wyo.1992). However, that rule does not apply where a citizen's fundamental constitutional right, such as free speech, is involved. The strong presumptions in favor of constitutionality are inverted, the burden then is on the governmental entity to justify the validity of the ordinance, and this Court has a duty to declare legislative enactments invalid if they transgress that constitutional provision.

*Miller v. City of Laramie,* 880 P.2d 594, 597 (Wyo.1994). "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 255, 122 S.Ct. 1389, 1404, 152 L.Ed.2d 403 (2002). A statute is unconstitutional on its face if it prohibits a substantial amount of protected expression. *Id.* at 244, 122 S.Ct. at 1398–99. If a statute is facially overbroad in violation of the First Amendment it cannot be enforced in any part. Because of the severity of the remedy, success of a First Amendment challenge to the facial overbreadth of a statute depends upon a finding that the statute's application to protected speech is substantial:

The First Amendment doctrine of overbreadth is an exception to our normal

rule regarding the standards for facial challenges. See *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). The showing that a law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep," *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), suffices to invalidate all enforcement of that law, "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression," *id.,* at 613, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830. See also *Virginia v. Black,* 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003); *New York v. Ferber,* 458 U.S. 747, 769, n. 24, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Dombrowski v. Pfister,* 380 U.S. 479, 491, and n. 7, 497, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

We have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or "chill" constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions. See *Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Bates v. State Bar of Ariz.,* 433 U.S. 350, 380, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, *Dombrowski,* supra, at 486–487, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas. Overbreadth adjudication, by suspending all enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech.

As we noted in *Broadrick,* however, there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects "legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." 413 U.S. at 615, 93 S.Ct. 2908, 37 L.Ed.2d 830. For there are substantial social costs created by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct. To ensure that these costs do not swallow the social benefits of declaring a law "overbroad," we have insisted that a law's application to protected speech be "substantial," not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, *ibid.,* before applying the "strong medicine" of overbreadth invalidation, *id.,* at 613, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830.

*Virginia v. Hicks,* 539 U.S. 113, 118–120, 123 S.Ct. 2191, 2196–97, 156 L.Ed.2d 148 (2003).

Rutti's sole argument is that § 6–4–303 is unconstitutionally overbroad due to the application of the decision by the United States Supreme Court in *Ashcroft v. Free Speech Coalition.* In *Free Speech Coalition,* the Supreme Court struck down two definitional terms of child pornography, sections 18 U.S.C. § 2256(8)(B) & (D), as overbroad and in violation of the First Amendment. 535 U.S. at 256, 258, 122 S.Ct. at 1405, 1406. Essentially, the Supreme Court ruled that child pornography can only be regulated if it meets the definition of obscenity under *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), or involves the use of an actual child as explained in *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The definitional sections struck down by the Supreme Court in Free Speech Coalition criminalized child pornography created through the use of "virtual" children, i.e., images of children

generated through technology that do not depict an actual child.

Rutti argues that the definitional provisions found unconstitutional by the United States Supreme Court in *Free Speech Coalition* are nearly identical to the corresponding definitional provisions in Wyoming's statute and therefore Wyoming's statute should be struck down as overbroad. Rutti presents no argument specifically challenging the corresponding two definitional provisions in the Wyoming statute. Rutti only argues that the entire statute is facially overbroad. Thus, this appeal presents this Court with no occasion to determine if any particular provision of § 6–4–303 is unconstitutionally overbroad. Since "[c]ourts will not pass upon constitutional questions unless necessary," *Fristam v. City of Sheridan,* 66 Wyo. 143, 150, 206 P.2d 741, 743 (Wyo. 1949), our only concern in this appeal is with the Wyoming statute as a whole.

Striking down an entire statute as overbroad is a drastic remedy and is not favored. *Ochoa,* 848 P.2d at 1364 ("overbreadth doctrine is 'strong medicine' which should be utilized sparingly."). Under federal law all other options should be attempted before declaring a statute void:

> When a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction. *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). Accord, e.g., *Haynes v. United States,* 390 U.S. 85, 92, 88 S.Ct. 722, 727, 19 L.Ed.2d 923 (1968) (dictum); *Schneider v. Smith,* 390 U.S. 17, 27, 88 S.Ct. 682, 687, 19 L.Ed.2d 799 (1968); *United States v. Rumely,* 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953); *Ashwander v. TVA,* 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Furthermore, if the federal statute is not subject to a narrowing construction and is impermissibly overbroad, it nevertheless should not be stricken down on its face; if it is severable, only the unconstitutional portion is to be invalidated.

*United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

> A state court is also free to deal with a state statute in the same way. If the invalid reach of the law is cured, there is no longer reason for proscribing the statute's application to unprotected conduct.

*Ferber,* 458 U.S. at 769 n. 24, 102 S.Ct. at 3361 n. 24. Indeed, the United States Supreme Court did not strike down the entire federal statute at issue in *Free Speech Coalition* as facially overbroad. It only ruled on the two definitional sections that were the subject of the appeal in *Free Speech Coalition.* In fact, the federal statute at issue in *Free Speech Coalition* is not facially invalid because it expressly is subject to a savings clause:

> Congress explicitly wrote a severability provision that states that "if any provision of this Act, including ... the definition of the child pornography ... is held to be unconstitutional, the remainder of this Act, including any other provision or section of the definition of the term child pornography, ... shall not be affected thereby." CPPA, Pub.L. No. 104–208, § 8, 110 Stat. 3009, 3009–31 (1996). Therefore, the unconstitutionality of §§ 2256(8)(B), (D), does not preclude conviction under other provisions of the CPPA.

*Jones v. United States,* 2004 WL 1013315, *9 n. 5, 2004 U.S. Dist. LEXIS 7997, *26 n. 5 (N.D.N.Y.2004); see also *United States v. Kelly,* 314 F.3d 908, 912 (7th Cir.2003) (the federal statute "has a savings clause evidencing Congress' intent to make the statute severable").

Thus, contrary to Rutti's argument, the mere application of the *Free Speech Coalition* decision does not render § 6–4–303 void as facially overbroad under the First Amendment. Rather, an independent analysis is required as to whether any sections of § 6–4–303 that might be unconstitutional can be severed from the statute. Whether or not provisions of a statute are severable is a matter of state law. *Local*

*514 Transp. Workers Union of Am. v. Keating*, 2003 OK 110, ¶ 13, 83 P.3d 835, ¶ 13 (Okla.2003); see also *Fraternal Order of Police v. Stenehjem*, 287 F.Supp.2d 1023, 1030–31 (D.N.D.2003) (whether invalid portions of a state statute which is otherwise found constitutional are severable is a matter of state law). Rutti presents no argument regarding the severability of provisions of the Wyoming statute.

Despite the lack of argument by Rutti, we will continue the analysis and determine if, under Wyoming law, § 6–4–303 should be struck down in its entirety if certain definitional provisions were determined to be unconstitutional. Section 6–4–303 does not contain a savings clause. Generally, however, Wyo. Stat. Ann. § 8–1–103(a)(viii) (LexisNexis 2003) provides for the severability of statutory provisions that are determined to be invalid if the valid portions are sufficient in themselves to accomplish the purpose of the statute:

> § 8–1–103. Rules of construction for statutes.
>
> (a) The construction of all statutes of this state shall be by the following rules, unless that construction is plainly contrary to the intent of the legislature:
>
> * * * *
>
> (viii) If any provision of any act enacted by the Wyoming legislature or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of any such act are severable.

Severability, then, is the general rule; and Rutti makes no argument that § 6–4–303 is indivisible.

As this Court reasoned on another occasion:

> Appellant does not suggest that the act is indivisible, and there has been no showing that it is unconstitutional as a whole. Furthermore, deletion of this section would not destroy the purposes of the act. Therefore, we find a constitutional encroachment only with respect to § 7–242.5(a), supra. See *Holm v.*

*State*, Wyo., 404 P.2d 740, at 743–745. We further hold that the last sentence contained in § 7–242.5(a), supra, does not bear the taint which we find objectionable in the preceding portions of the section. Since this portion of the section is a necessary part of the amended procedure in mental-illness or deficiency cases, it shall be retained.

*Sanchez v. State*, 567 P.2d 270, 280 (Wyo. 1977). The same reasoning applies to this appeal. One of the definitions of child pornography included in § 6–4–303 requires the use of a real child. The statute therefore can be enforced even if all other definitional sections were severed from the statute. "[T]he several parts are [not] so interdependent that the main purpose of the law would fail by reason of the invalidity of a part." *McFarland v. City of Cheyenne*, 48 Wyo. 86, 99, 42 P.2d 413, 416 (Wyo.1935). This Court determines that the provisions of § 6–4–303 that are the subject of Rutti's protests would be severable if they were found to be unconstitutional. The constitutional portions of § 6–4–303 remain valid and enforceable. Therefore, the statute generally is not facially overbroad.

Rutti fleetingly alleges that § 6–4–303 is unconstitutionally vague as applied to him. His only assertion supporting this argument is that if § 6–4–303 is not facially unconstitutional, then the Information charging him with sexual exploitation of a child by delivering child pornography was insufficient because it did not specify under which definition of child pornography Rutti was being charged. Rutti cites no case authority supporting his position that alleged vagueness in an Information renders a statute unconstitutional as applied. Given the lack of adequate cogent argument and the lack of any citation to pertinent authority, we decline to address Rutti's void for vagueness as applied argument.

We emphasize that Rutti has argued only that § 6–4–303 is facially overbroad. He has presented no argument as to the constitutionality of any specific portion of § 6–4–303 so we do not consider the same

in this appeal. Our determination that § 6–4–303 is not facially overbroad ends our discussion. We do note, however, that even the State concedes that the pertinent definitional language of the Wyoming statute is very similar to the corresponding language in the federal statute found unconstitutional by the United States Supreme Court in *Free Speech Coalition.* Although unconstitutional provisions of a statute are judicially severable if it were to become necessary, it is preferable if § 6–4–303 receives the urgent attention of the Wyoming Legislature.

*Rutti,* ¶¶ 11–19, 100 P.3d at 401–404.

[¶ 8] In *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), the U.S. Supreme Court was called upon to consider the constitutionality of portions of the Child Pornography Prevention Act of 1996. That act expanded the federal prohibition of child pornography to include not only pornographic images made using actual children, but also " 'any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture that is, or appears to be, of a minor engaging in sexually explicit conduct,' [18 U.S.C.] § 2256(8)(B), and any sexually explicit image that is 'advertised, promoted, presented, described, or distributed in such a manner that conveys the impression' it depicts 'a minor engaging in sexually explicit conduct.' " *Id.* at 535 U.S. 234–35, 122 S.Ct. at 1392–93. The U.S. Supreme Court characterized that language as banning a range of sexually explicit images called "virtual child pornography," that appear to depict minors but were produced by means other than using real children, such as through the use of youthful-looking adults or computer imaging technology. Generally, pornography can be banned only if it is *obscene* under *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). However, pornography depicting actual children can be proscribed *whether or not the images are obscene* because of the State's interest in protecting the children exploited by the production process. *New York v. Ferber,* 458 U.S. 747, 758, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Ultimately, the U.S. Supreme Court found that the statutes in question were overbroad and, hence, unconstitutional. *Free Speech Coalition,* 122 S.Ct. at 1396–1406.

## DISCUSSION

[¶ 9] Wyo. Stat. Ann. § 6–4–303 (LexisNexis 2007) is at issue in this case:

§ 6–4–303. **Sexual exploitation of children; penalties; definitions.**

(a) **As used in this section:**

(i) "Child" means a person under the age of eighteen (18) years;

(ii) **"Child pornography" means any visual depiction, including any photograph, film, video, picture, computer or computer-generated image or picture, whether or not made or produced by electronic, mechanical or other means, of explicit sexual conduct, where:**

(A) The production of the visual depiction involves the use of a child engaging in explicit sexual conduct;

(B) **The visual depiction is of explicit sexual conduct involving a child *or an individual virtually indistinguishable from a child;* or**

(C) **The visual depiction has been created, adapted or modified to depict explicit sexual conduct involving a child *or an individual virtually indistinguishable from a child.***

(D) Repealed by Laws 2005, ch. 70, § 2.

(iii) "Explicit sexual conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, between persons of the same or opposite sex, bestiality, masturbation, sadistic or masochistic abuse or lascivious exhibition of the genitals or pubic area of any person;

(iv) "Visual depiction" means developed and undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.

(b) A person is guilty of sexual exploitation of a child if, for any purpose, he knowingly:

(i) Causes, induces, entices, coerces or permits a child to engage in, or be used for, the making of child pornography;

(ii) Causes, induces, entices or coerces a child to engage in, or be used for, any explicit sexual conduct;

(iii) Manufactures, generates, creates, receives, distributes, reproduces, delivers or possesses with the intent to deliver, including through digital or electronic means, whether or not by computer, any child pornography;

(iv) Possesses child pornography, except that this paragraph shall not apply to:

(A) Peace officers, court personnel or district attorneys engaged in the lawful performance of their official duties;

(B) Physicians, psychologists, therapists or social workers, provided such persons are duly licensed in Wyoming and the persons possess such materials in the course of a bona fide treatment or evaluation program at the treatment or evaluation site; or

(C) Counsel for a person charged under this section.

(c) The sexual exploitation of a child pursuant to paragraphs (b)(i) through (iii) of this section is a felony punishable by imprisonment for not less than five (5) years nor more than twelve (12) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

(d) The sexual exploitation of a child by possession of sexually exploitive material pursuant to paragraph (b)(iv) of this section is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

(e) A second or subsequent conviction pursuant to paragraphs (b)(i) through (iv) of this section, or of a substantially similar law of any other jurisdiction, is a felony punishable by imprisonment for not less than seven (7) years nor more than twelve (12) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

(f) Any person who is convicted of an offense under this section shall forfeit to the state the person's interest in:

(i) Any visual depiction of a child engaging in explicit sexual conduct in violation of this section, or any book, magazine, periodical, film, videotape or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, possessed or received in violation of this section;

(ii) Any property, real or personal, constituting or traceable to gross proceeds obtained from such offense;

(iii) Any property, real or personal, used or intended to be used to commit or to promote the commission of such offense. [Emphasis added.]

The emphasized words in the foregoing statute give rise to the constitutional challenge brought to this Court by Jones. The statute at issue in *Rutti* (which was clearly within the reach of *Free Speech Coalition*) was amended in 2005 as follows:

(ii) "Child pornography" means any visual depiction, including any photograph, film, video, picture, computer or computer-generated image or picture, whether or not made or produced by electronic, mechanical or other means, of explicit sexual conduct, where:

(A) The production of the visual depiction involves the use of a child engaging in explicit sexual conduct;

(B) The visual depiction is, or appears to be of a child engaging in of explicit sexual conduct involving a child or an individual virtually indistinguishable from a child; or

(C) The visual depiction has been created, adapted or modified to appear that a child is engaging in depict explicit sexual conduct, or involving a child or an individual virtually indistinguishable from a child. [Underlined material added, material with strike-through deleted.]

2005 Wyo. Sess. Laws ch. 70 § 1.

[¶ 10] The issue is whether these amendments allow Wyoming's statute to survive the rule established in *Free Speech Coalition*. In light of the U.S. Supreme Court's decision in that case, the federal statute, 18 U.S.C. § 2256, was amended to read:

## § 2256. Definitions for chapter.

. . . .

(8) "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or **is indistinguishable from, that of a minor engaging in sexually explicit conduct;** or

(C) such visual depiction has been created, adapted or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

(9) "identifiable minor"—

(A) means a person—

(i) (I) who was a minor at the time the visual depiction was created, adapted, or modified; or

(II) whose image as a minor was used in creating, adapting, or modifying the visual depiction; and

(ii) who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and

(B) shall not be construed to require proof of the actual identity of the identifiable minor.

(10) "graphic," when used with respect to a depiction of sexually explicit conduct, means that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted; and

(11) the term **"indistinguishable" used with respect to a depiction, means virtually indistinguishable, in that the depiction is such that an ordinary person viewing the depiction would conclude** that the depiction is of an actual minor engaged in sexually explicit conduct. This definition does not apply to depictions that are drawings, cartoons, sculptures, or paintings depicting minors or adults. [Emphasis added.]

18 U.S.C.S § 2256 (1991 and Supp.2007).

[¶ 11] It is evident that the challenges to laws aimed at regulating, by criminal statute, sexual performances by children, and child pornography in general, are evolving constantly as the courts wrestle with the fine lines between what is prohibited and what is permitted—what is protected speech under the First Amendment and what is not protected. *State v. Tooley,* 2007–Ohio–3698, 114 Ohio St.3d 366, 872 N.E.2d 894 (2007); *People v. Normand,* 215 Ill.2d 539, 294 Ill.Dec. 637, 831 N.E.2d 587 (2005); and see generally Benjamin J. Vernia, Annotation, *Validity, Construction, and Application of State Statutes or Ordinances Regulating Sexual Performance by a Child,* 42 A.L.R. 5th 291 (1996 and Supp.2007).

[¶ 12] No doubt, statutes will have to be fine-tuned as the case law develops further in this regard. However, in light of our decision in *Rutti* we need not give a dispositive answer to the issue raised in this appeal because Jones admitted that the visual images that constituted Counts I and VII were child pornography, and further evidence adduced by the State established that they were real children, not just images "virtually indistinguishable" from children. We acknowledge that it has been held that a trier of fact is capable of determining whether real children were used in pornographic images simply by viewing the images themselves. *Normand,* 294 Ill.Dec. 637, 831 N.E.2d at 596. Therefore, under the circumstances of this case we need not address the question of whether an image that is "virtually indistinguishable from a child" exceeds the limits imposed by the First Amendment. Whether the statute is vague or overbroad in that sense must be determined in a case where the image at issue is alleged to be that of an individual "virtually indistinguishable from a child," but not actually a child.[1]

1. Jones received most of the benefits of his plea bargain. However, given our holding in *Rutti,*

## CONCLUSION

[¶ 13]   The judgment and sentence of the district court is affirmed.

and the circumstances that neither Count I nor Count VII involved an image "virtually indistinguishable" from a child (but instead an actual child), Jones's plea bargain was insubstantial in that regard.   This case is distinguishable from *Holcomb v. State*, 2007 WY 131, ¶ 11, 165 P.3d 105, 110–11 (Wyo.2007) (where we remanded to allow the appellant to withdraw his guilty plea, if he chose to do so, because the plea bargain involved a mutual mistake that made it wholly insubstantial).