# Illinois Official Reports

## Appellate Court

---

### *Sandberg v. Brian B.*, 2018 IL App (2d) 180082

---

| | |
|---|---|
| Appellate Court Caption | JESSICA SANDBERG, Petitioner-Appellee, v. BRIAN B., Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-18-0082 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | June 21, 2018<br><br>July 18, 2018<br>July 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 09-FA-190; the Hon. Mary H. Nadar, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brian B., of Vernon Hills, appellant *pro se*.<br><br>Paul A. Zukowski, of Prairie State Legal Services, of McHenry, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices McLaren and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1    *Pro se* respondent, Brian B., appeals from an order denying his motion to reconsider the trial court's entry of a plenary order of protection in favor of petitioner, Jessica Sandberg. For the following reasons, we affirm.

¶ 2                                                    I. BACKGROUND

¶ 3    The record reflects that Brian and Jessica are the parents of a son, J.B., who was born on August 1, 2005. The parties were never married. From 2013 until the event that gave rise to the issuance of the plenary order of protection, Brian had residential custody of J.B. On October 16, 2017, Jessica filed a verified petition for an emergency order of protection in Lake County. The matter was designated as No. 17-OP-2040. In the petition, Jessica explained why she wanted the trial court to issue an order of protection for her and J.B. against Brian:

> "On 10-12-17 Brian [B.] took me to court trying to ask for full custody and child support for our son [J.B.]. The judge threw out the motion due to Brian not completing the motion right. Brian got very upset and went to my son's school in Chicago and demanded the principal to give him [J.B.], so the principal called me and asked me if Brian can take [J.B.] from the school and the police were there with Brian because Brian called the police and the police said that they [couldn't] allow Brian to take [J.B.] out. I am wanting this order of protection on Brian because I don't know what he is going to try to do next. My son is terrified of him. Even more than he was. Brian keeps texting me [and] accusing me of taking our son pics [*sic*] from his old school. He is also calling my 9-year-old daughter to try to get a hold of me. I'm terrified that he is going to try to come to the school when [J.B.] gets out and try to get him. I'm worried that my son is having a hard time at school because he is scared that his dad could come up there and take him. Also when me and Brian were together he put his hands on me quite a few times."

¶ 4    Based upon the allegations in Jessica's petition, the Lake County circuit court entered an emergency order of protection. Two days later, Jessica filed a motion to modify the allocation of parental responsibilities in McHenry County. That matter was designated as No. 09-FA-190, the case number that was assigned in 2009 when Jessica had residential custody of J.B. and she filed a petition against Brian for child support. In the motion to modify the allocation of parental responsibilities, Jessica alleged that Brian had "put his hands" on J.B. and pushed him to the ground. She also alleged that Brian had been arrested in Lake County and that there was an order of protection requiring Brian to stay away from her and J.B. Jessica requested that Brian receive supervised visitation with J.B. and be ordered to attend anger management classes.

¶ 5    On October 19, 2017, the McHenry County circuit court ordered the parties to notify the Lake County circuit court of the proceedings in case No. 09-FA-190 and to seek to have the Lake County case transferred to McHenry County. The next day, the Lake County court transferred case No. 17-OP-2040 to McHenry County.

¶ 6    On October 25, 2017, the parties were present in McHenry County for a hearing on the extension of Jessica's emergency order of protection to a plenary order of protection. At the

hearing, Jessica testified that she lived in Chicago and that Brian lived in Vernon Hills. On September 18, 2017, one of Brian's neighbors called her and told her that she saw Brian push J.B. against a wall. Jessica called the police, and the police took J.B. to the police station. Brian was charged with domestic battery in Lake County case No. 17-CM-2763. The Department of Children and Family Services (DCFS) and the police told Jessica that she had to take J.B. to her home in Chicago. After that, Brian was served with an order prohibiting him from having any contact with J.B., as a condition of his bond. On October 12, 2017, Brian went to the school in Chicago that Jessica had enrolled J.B. in, tried to take him out of the school, and demanded that J.B. come home with him. The police were called. It was a huge scene. Therefore, she filed a petition for an emergency order of protection.

¶ 7        Jessica said that she wanted a plenary order of protection entered against Brian because J.B. was scared for his life. He was terrified that Brian was going to get him and hurt him again. Jessica was concerned about J.B.'s safety. The September 18 incident was not the first time that Brian had hurt J.B. There had been numerous DCFS cases involving Brian and J.B. that were dropped, which surprised Jessica. There was currently a case pending with DCFS relating to Brian's domestic battery charge.

¶ 8        Brian then cross-examined Jessica and asked her why, if she feared for J.B.'s life or safety, she waited "five or seven years" to do anything about it, since J.B. had been in his care since 2012.[1] Jessica said that Brian had put his hands on J.B. only last March and that he had also hit J.B. in the head with a cell phone, which was why she called DCFS. Jessica said that the last five to seven years she had been struggling and she needed Brian to be a good father to J.B., and he was, but that when Brian put his hands on J.B. "that's when it got real" and she had to protect J.B. Brian asked her why she had called DCFS three times in less than 30 days, and she said that she called DCFS only once, last March.

¶ 9        In Brian's case-in-chief, he said that J.B. had been living with him for five years because Jessica got kicked out of her house and she called him for help with J.B. He took J.B. in, and he never asked Jessica for anything. However, after a while he started asking Jessica for child support, but she never paid him any. The only reason Jessica filed for an order of protection was that he "served her at the school in front of officers." He gave the officers the papers right in front of Jessica. Brian said that he could have J.B. at any time because the papers said that he had residential custody of J.B. So he went to the school to get J.B., and he called the police himself and showed them the papers that indicated that he was the residential custodian of J.B. He went to that school to take J.B. out only because Jessica took J.B. out of the school that he had enrolled J.B. in. "And he was doing fine. It was all her doing that she—it got to the point of me getting arrested. I never had no type of cases against me, nothing." After he left the school, he went to his attorney's office. His attorney told him that there was no reason why he should not have residential custody of J.B.

¶ 10       Brian testified that he was arrested on September 18, 2017, but on October 5, 2017, "that's when we had the—that's when they lifted that. And so I asked the attorney, I'm like because I have this [(the 2014 order giving Brian residential custody of J.B.)], does that mean does he come back? He says, yes, because the DCFS never took him out of the house. The

[1]The record reflects that on August 20, 2013, the trial court ordered that Brian be given residential custody of J.B. until June 1, 2014. On March 11, 2014, the trial court ordered that Brian would continue to have residential custody of J.B. and that placement could be reviewed in five years.

police did." Finally, Brian said that Jessica's statement that he put his hands on her in the past was false.

¶ 11 The court said that it had heard all of the evidence from both parties and that both parties stated that they had said everything that they wanted to say to the court. It then noted that, at a hearing on an order of protection, a petitioner could testify to past acts of abuse. It said that, although Jessica did not allege past acts of abuse in her petition—specifically, that Brian pushed J.B. into a wall or that he hit J.B. in the head with a cell phone—she testified to those two acts, and Brian did not deny them. Based upon those two acts, the court said that it had to issue an order of protection. An order of protection for one year was then entered by the court. Referring to the 2014 order granting him residential custody of J.B., Brian asked the court if that order was not valid anymore. The court informed him that the plenary order of protection usurped the custody order.

¶ 12 Brian subsequently hired counsel, who filed a motion to reconsider the plenary order of protection or, in the alternative, to establish parenting time. In that motion, counsel argued that section 220 of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/220(a)(1) (West 2016)) was violated when the hearing on the plenary order of protection in McHenry County was held only nine days after the hearing on the emergency order of protection in Lake County. Counsel also claimed that Brian was deprived of due process at the plenary hearing when Jessica provided testimony that was outside the four corners of her verified petition for an emergency order of protection. The motion to reconsider was denied. However, the court modified the plenary order of protection to allow for supervised visitation between Brian and J.B. for one hour per week, one day per week, until further order of the court. The court set a status date of March 5, 2018, but held that its order was final and appealable.

¶ 13 In his reply brief on appeal, Brian alleged that on January 8, 2018, after a jury trial, he was found not guilty on all charges in case No. 17-CM-2763.

¶ 14 II. ANALYSIS

¶ 15 On appeal, Brian argues that the trial court erred (1) in allowing Jessica to "bring evidence and allegations outside the four corners of her petition as set forth" and (2) "due to the violation of section 220 of the Illinois Domestic Violence Act."

¶ 16 A. Allegations Outside the Four Corners of the Petition

¶ 17 First, Brian claims that the trial court erroneously allowed Jessica to testify about allegations that were not contained in her verified petition for an emergency order of protection—specifically, that Brian had recently pushed J.B. and hit him in the head with a cell phone.

¶ 18 Proceedings under the Act are governed by the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2016)). 750 ILCS 60/205(a) (West 2016). The Code specifically recognizes that no complaint is bad in substance that reasonably informs the defendant of the nature of the claim that he or she is called on to meet. 735 ILCS 5/2-612(b) (West 2016); *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003).

¶ 19 Section 214 of the Act, entitled "Order of Protection; remedies," provides, in pertinent part:

"(c) Relevant factors; findings.

(1) In determining whether to grant a specific remedy, other than payment of support, the court shall consider relevant factors, including but not limited to the following:

(i) the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect or exploitation of the petitioner or any family or household member, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household; and

(ii) the danger that any minor child will be abused or neglected or improperly relocated from the jurisdiction, improperly concealed within the State or improperly separated from the child's primary caretaker." 750 ILCS 60/214(c)(1)(i), (ii) (West 2016).

¶ 20　　A petitioner alleging abuse and seeking an order of protection has the burden to establish by a preponderance of the evidence that abuse has occurred. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). The trial court's determination as to whether the petitioner has met her burden will not be disturbed unless it is against the manifest weight of the evidence. *Id.* at 348-49. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* at 350.

¶ 21　　In Jessica's emergency petition, she alleged that Brian tried to take J.B. out of his school and that the police informed Brian that he could not do so. She also alleged that J.B. was terrified of Brian and that J.B. was even more afraid of him after Brian tried to take him out of school. She claimed that J.B. was having a hard time at school because "he [was] scared that his dad could come up there and take him." It is clear that the allegations in the petition focused specifically on J.B.'s fear of Brian. Therefore, those allegations were specific enough to reasonably inform Brian of the nature of the claim against him. See 735 ILCS 5/2-612(b) (West 2016).

¶ 22　　Also, section 214 of the Act specifically provides that, in determining whether to grant an order of protection, the trial court *shall* consider the nature, frequency, severity, pattern, and consequences of the respondent's past abuse of the petitioner *or any family or household member* as well as the danger that any minor child will be abused or neglected. 750 ILCS 60/214(c)(1)(i), (ii) (West 2016). Therefore, the trial court was not only *allowed* to consider the evidence that Brian had recently pushed J.B. and hit him in the head with a cell phone, it was *required* to do so. For these reasons, we find that the trial court did not err in allowing Jessica to testify about allegations that were not contained in her petition for an emergency order of protection.

¶ 23　　　　　　　　　　B. Violation of Section 220 of the Act

¶ 24　　Next, Brian argues that the trial court granted Jessica a plenary order of protection in violation of section 220 of the Act. Section 220(a) provides, in relevant part:

"§ 220. Duration and Extension of Orders.

(a) Duration of emergency and interim orders. Unless re-opened or extended or voided by entry of an order of greater duration:

> (1) Emergency orders issued under Section 217 shall be effective for not less than 14 nor more than 21 days[.]" *Id.* § 220(a)(1).

¶ 25    On appeal, Brian does not allege *how* the trial court violated section 220 of the Act when it entered the plenary order of protection. Therefore, he has forfeited this claim on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (the appellant's brief shall contain his or her argument *and the reasons therefor*). However, the forfeiture rule is an admonition to the parties rather than a limitation on the reviewing court. *People v. Normand*, 215 Ill. 2d 539, 544 (2005). Even though an issue may be forfeited, we may address it based on our obligation to achieve a just result and maintain a uniform body of precedent. *In re Jamari R.*, 2017 IL App (1st) 160850, ¶ 52.

¶ 26    Here, since the plenary order of protection affects Brian's visitation with J.B., we will overlook Brian's forfeiture of this issue in order to achieve a just result. To the extent that Brian is attempting to raise the same argument that his counsel did when he filed his motion to reconsider or in the alternative to establish parenting time, we will consider that argument.

¶ 27    In the motion to reconsider, counsel argued that because the emergency order of protection was entered on October 16, 2017, and the plenary order of protection was entered on October 25, 2017, the interval was less than 14 days, in violation of section 220 of the Act. See 750 ILCS 60/220(a)(1) (West 2016).

¶ 28    The primary objective of statutory interpretation is to ascertain and give effect to the intent of the legislature. *People v. Perry*, 224 Ill. 2d 312, 323 (2007). The plain language of the statute is the best indication of the legislature's intent. *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008).

¶ 29    Here, the plain language of section 220 of the Act specifically states that an emergency order of protection shall be effective not less than 14 nor more than 21 days, *unless it is reopened, extended, or voided by the entry of an order of greater duration*. 750 ILCS 60/220(a)(1) (West 2016). Accordingly, section 220 of the Act was not violated when the emergency order that was entered on October 16, 2017, was extended by the entry of the plenary order on October 25, 2017.

¶ 30    For these reasons, the judgment of the circuit court of McHenry County is affirmed.

¶ 31    Affirmed.