# United States Court of Appeals
## For the First Circuit

No. 07-1454

UNITED STATES OF AMERICA,

Appellee,

v.

RUSSELL R. HOEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Circuit Judge,
Campbell and Stahl, Senior Circuit Judges.

Mary Davis with whom Tisdale & Davis, P.A. was on brief for
appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, U.S. Attorney, was on brief for appellee.

November 29, 2007

**LYNCH**, <u>**Circuit Judge**</u>.  Two issues of law are raised as to the interpretation of the sentencing guideline, U.S.S.G. § 2G2.2(b)(4), for possession of sadistic or masochistic child pornography.

Russell Hoey appeals from his sixty-three month sentence, but not from his conviction, for possession of child pornography. He primarily objects to the sentencing judge's application of a four-level increase under U.S.S.G. § 2G2.2(b)(4) for possession of material "that portrays sadistic or masochistic conduct or other depictions of violence."  He argues (1) that the prosecution did not meet its burden of proving these images were of actual children, (2) that the conduct depicted does not qualify as sadomasochistic, and (3) that even if it did, the prosecutor also had to prove the conduct actually occurred.  We reject the first argument because there was adequate evidence to support the court's determination that the image was of an actual child.  As to the second argument, the district court did not err in defining sadism or masochism or in applying the definition to the pertinent image. We reject the last argument as a matter of law: the Guidelines do not require that the image represent actual sadism or masochism.

I.

As part of a broader investigation of a child pornography ring in which Hoey was implicated as a customer, the U.S. Postal

Inspection Service mailed Hoey a fake solicitation to purchase further child pornography in August 2004. Based on Hoey's affirmative response and payment of $45 for two videotapes entitled "Kissing Cousins" and "Boys and Girls," an undercover postal inspector made a controlled delivery of the tapes to Hoey's residence that November. After Hoey accepted the package, other inspectors secured the residence while a warrant was obtained.

Upon questioning, Hoey admitted that he expected to see real children involved in sexual situations in the videos and that he stored child pornography on his computer. The computer, seized during the search, did contain pornographic images. These images were submitted to the National Center for Missing and Exploited Children ("Center") for identification purposes. The Center reported that 131 of the images contained children previously identified by law enforcement as actual children.

Hoey pleaded guilty on November 2, 2006, to a one-count information for possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).[1] He agreed that some of the material depicted children under age twelve and that his offense involved the use of a computer; he also admitted to the prosecution version of events, which stated that the 131 images and the two videos depicted actual

---

[1] That section criminalizes, inter alia, the "knowing[] possess[ion of] any . . . videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(5)(B).

children. Consequently, Hoey's Presentence Report ("PSR") recommended Guidelines increases under section 2G2.2(b)(2) (material involving minors under age twelve), section 2G2.2(b)(6) (use of a computer in the commission of the crime), and section 2G2.2(b)(7)(B) (possession of more than 150 but fewer than 300 images).[2]

The PSR also recommended a four-level increase under section 2G2.2(b)(4) for possession of at least one image "that portrays sadistic or masochistic conduct or other depictions of violence." It based this recommendation on four images depicting bondage of young boys obtained from Hoey's computer but not included in the 131 images identified by the Center. The Assistant U.S. Attorney subsequently submitted an additional purportedly sadomasochistic image, not among the 131 images but also identified by the Center as appearing to depict a known child.

Hoey objected to the four-level increase recommended by the PSR and raised during the sentencing hearing the same arguments he makes on appeal. He called a witness who owns a photography shop to testify to the ease with which digital pictures can be manipulated. That witness admitted that he had never created an image of a person without using an actual person and knew no one

_____

    [2] Pursuant to U.S.S.G. § 2G2.2 cmt. n.4(B)(ii), each videotape was counted as containing seventy-five images. The PSR consequently imputed 281 images to Hoey. Throughout, references to the Guidelines refer to the 2006 edition of the U.S. Sentencing Guidelines Manual.

-4-

who had succeeded in doing so, and that he was unable to say whether the images were of real children or not. The judge discounted this testimony, finding that the witness was not a qualified expert and was not helpful. Hoey also argued that his serious health problems, in addition to his lack of criminal record and his good conduct between the 2004 sting and Hoey's guilty plea in 2006, were grounds for a downward departure or variance.

The district court found that the last image submitted by the prosecutor ("Exhibit 3A"), which the Center had identified as a known child, and one of the images identified as sadomasochistic by the PSR ("Exhibit 5") depicted real children and portrayed sadistic conduct. It agreed with the prosecutor that for purposes of this guideline, it made no difference if the pictures for the enhancement were composites of real children -- that is, if they were not accurate depictions of events that actually occurred. The court then calculated Hoey's Guidelines range, adding a four-level increase for the sadistic images; denied Hoey's requests for downward departures; and sentenced him to sixty-three months, the bottom of the calculated Guidelines range, as well as to three years of supervised release with numerous conditions and a $100 mandatory assessment.

II.

A.        Application of U.S.S.G. § 2G2.2(b)(4)

In sentencing appeals, we review the district court's interpretation of the Guidelines de novo and its determinations of facts for clear error. United States v. Woodward, 277 F.3d 87, 91 (1st Cir. 2002). "The government has the burden of proving the facts central to upward adjustments in offense levels by preponderance of the evidence, not by proof beyond a reasonable doubt." Id. For the enhancement under section 2G2.2(b)(4) to apply, there is no requirement that the sadomasochistic image be one of the images underlying the conviction. That is because the possession of sadistic images is relevant conduct to Hoey's offense. See U.S.S.G. § 1B1.3; United States v. Barevitch, 445 F.3d 956, 958-59 (7th Cir. 2006); United States v. Ellison, 113 F.3d 77, 82 (7th Cir. 1997).

1.    The Depiction of Actual Children

Possession of child pornography that does not depict actual children is not criminalized. See Ashcroft v. Free Speech Coal., 535 U.S. 234 (2002). Thus the prosecutor must show by a preponderance of the evidence that a picture relied on for sentencing purposes depicts a real child. United States v. Rodriguez-Pacheco, 475 F.3d 434, 439 (1st Cir. 2007). Given this standard, the prosecutor need not "rule out every conceivable way the pictures could have been made other than by ordinary photography." Id. at 444 (quoting United States v. Nolan, 818 F.2d 1015, 1020 (1st Cir. 1987)) (internal quotation mark omitted).

"The question of whether or not a particular image is of a virtual child or of a real child is an issue of fact, to be determined by the trier of fact"; that determination stands unless it is clearly erroneous. Id. at 438.

Whether an image is that of an actual child is evaluated on the evidence as a whole. Id. at 442. There is no per se rule that the prosecution is required to produce expert testimony in every case to establish that the depicted child is real, for either guilt or sentencing purposes. Id. at 437. That is the approach taken in seven circuits. Id. at 440-41 (collecting cases from the Second, Fifth, Sixth, Eighth, and Tenth Circuits holding that no expert testimony is required); United States v. Salcido, --- F.3d ----, 2007 WL 3037350, at *3 (9th Cir. Oct. 19, 2007) (per curiam) (same). No circuit has adopted a per se rule requiring expert testimony.

Hoey argues that the judge cannot make this determination based solely on his own examination of the image. As we have previously noted, however, many circuits agree that "[factfinders] are capable of distinguishing between real and virtual images, without expert assistance." Id. at 441. The argument is irrelevant here in any event. The prosecutor submitted additional evidence -- the report from the Center -- that Exhibit 3A depicted a real child. See id. at 443 (relying upon similar evidence). As to Exhibit 3A, it was not clearly erroneous for the district court

to conclude the image depicted a real child. It takes only one such image for § 2G2.2(b)(4) to apply. We examine only Exhibit 3A as to Hoey's remaining arguments.

### 2. What Constitutes Sadistic Conduct

We review the district court's interpretation of the Guidelines de novo. The Guidelines do not specify what constitutes "sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G2.2(b)(4). Webster's Third New International Dictionary defines "sadism" as "the infliction of pain upon a love object as a means of obtaining sexual release," "the satisfaction of outwardly directed destructive impulses as a source of libidinal gratification," "a delight in physical or mental cruelty," or "excessive cruelty." It follows that an image's portrayal of sadistic conduct includes portrayal of conduct a viewer would likely think is causing pain to a depicted young child. See, e.g., United States v. Myers, 355 F.3d 1040, 1043 (7th Cir. 2004).

Exhibit 3A portrays a young boy with an expression of pain and disgust who is being anally penetrated by the penis of a much older man. The relative sizes of the man's penis and the small boy, in addition to the boy's expression, all suggest the likelihood of ongoing pain. We agree with the many circuits which have found that images depicting the sexual penetration of young and prepubescent children by adult males represent conduct sufficiently likely to involve pain such as to support a finding

-8-

that it is inherently "sadistic" or similarly "violent" under the terms of section 2G2.2(b)(4).  See United States v. Belflower, 390 F.3d 560, 562 (8th Cir. 2004) (per curiam); Myers, 355 F.3d at 1043; United States v. Kimler, 335 F.3d 1132, 1143 (10th Cir. 2003); United States v. Caro, 309 F.3d 1348, 1351-52 (11th Cir. 2002); United States v. Lyckman, 235 F.3d 234, 238 (5th Cir. 2000); United States v. Delmarle, 99 F.3d 80, 83 (2d Cir. 1996).[3]

Hoey argues that the image depicts a man about to penetrate, but not yet penetrating, the child, so the image necessarily cannot be of sadism.  The record does not support the argument; more importantly, as a matter of law, the proposition is wrong.  First, the district court found that the image depicted "a young boy, prepubescent, being . . . penetrated by the sexual organ of a much older man," a finding of fact that we can only overturn if clearly erroneous, which it is not.

Second, even if the image depicted only the moment and not the consummation of actual penetration, the conduct is sadistic.  Here an image of attempted sexual penetration combined with this young child's pained expression is sufficient to

---

[3]    The bondage of children has also been held to constitute sadistic behavior.  See United States v. Wolk, 337 F.3d 997, 1008 (8th Cir. 2003); Caro, 309 F.3d at 1352; see also United States v. Kimbrough, 69 F.3d 723, 734 (5th Cir. 1995).  Exhibit 5, which involves a young boy gagged and hanging in chains from a wall, clearly depicts sadistic conduct.

-9-

establish that the picture is intended to give the viewer pleasure based on the child's actual or anticipated pain.

Finally, Hoey argues that these pictures do not depict "the gratuitous infliction of pain above and beyond that of child pornography." This argument fails to acknowledge that pictures of naked children alone can constitute child pornography if they involve a "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v), (8). A four-level increase is warranted when a young child has been subjected to the additional pain of penetration or similarly violent conduct. See Myers, 355 F.3d at 1044; Lyckman, 235 F.3d at 240.

3.    What Constitutes the Portrayal of Sadistic Conduct

Hoey argues that there was insufficient evidence to support the finding that the image portrayed sadistic or masochistic conduct. He argues that the image must portray sadistic conduct that actually occurred: the prosecutor must show not only that the child is real, but that the sadism is as well. This is a matter of interpretation of the Guidelines, which provide that "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels." U.S.S.G. § 2G2.2(b)(4).

The premise of Hoey's argument is wrong, and we reject it. That an image "portrays sadistic or masochistic conduct" does not require that it depict actual sadistic conduct, id. (emphasis

-10-

added); if that were the Sentencing Commission's intent, there would be express language to that effect. The language it did choose is to the contrary. Webster's Third New International Dictionary defines "portray" as "to represent by drawing, painting, engraving," "to describe in words," and to "enact." The Guidelines simply do not require the image to be an accurate documentation of real sadistic conduct.

There is no conflict between section 2G2.2(b)(4) and the child pornography statute as interpreted by Ashcroft v. Free Speech Coalition and New York v. Ferber, 458 U.S. 747 (1982). Ferber upheld a criminal ban on the distribution of child pornography because of the legitimate state interest in protecting "the physiological, emotional, and mental health of the child." Id. at 758. The Court emphasized that the child is harmed not only through the actual production of pornography, but also by the knowledge of its continued circulation. Id. at 756-59 & n.10; see also Ashcroft, 535 U.S. at 249 ("Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being."). Based in significant part on this psychological harm, the Court later upheld a statute criminalizing the mere possession of child pornography. Osborne v. Ohio, 495 U.S. 103, 110-11 (1990) ("[T]he materials produced by child pornographers permanently record the victim's abuse. The

-11-

pornography's continued existence causes the child victims continuing harm by haunting the children in years to come.").

It is this continuing psychological harm that Hoey overlooks. An image of an identifiable, real child involving sadistic conduct -- even if manipulated to portray conduct that was not actually inflicted on that child -- is still harmful, and the amount of emotional harm inflicted will likely correspond to the severity of the conduct depicted.

For these reasons, the child pornography statute defines "child pornography" as including a "visual depiction [that] has been created, adapted, or modified to appear that an <u>identifiable minor</u> is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(C) (emphasis added). While the Supreme Court in <u>Ashcroft</u> held that the definitions of child pornography previously contained in § 2256(8)(B) and (D) were unconstitutional because they reached images that were completely fabricated, it carefully reserved consideration of § 2256(8)(C) and noted that manipulated images of identifiable children "implicate the interests of real children and are in that sense closer to the images in <u>Ferber</u>." <u>Aschroft</u>, 535 U.S. at 242. Based on similar reasoning, the Eighth Circuit has held that an image in which the face of a known child was transposed onto the naked body of an unidentified child constituted child pornography outside the scope of First Amendment protection. <u>United States</u> v. <u>Bach</u>, 400 F.3d 622, 629-32 (8th Cir. 2005). We

agree. The district court committed no error in interpreting or applying the guideline.

B.        Reasonableness of the Sentence

There was no error by the court in calculating the Guidelines range, including the relevant departures. We turn to whether the district court provided a reasoned explanation for the sentence imposed. See United States v. Jiménez-Beltre, 440 F.3d 514, 518-19 (1st Cir. 2006) (en banc).

Hoey argues that the district court did not provide an adequate explanation because it did not address to his satisfaction his arguments for downward departures or variances, and that as a result the sentence imposed was unreasonably severe. This argument fails.

First, the court directly addressed Hoey's concerns. It noted that even though Hoey possessed very few sadistic images, the number he possessed did not make a difference under section 2G2.2(b)(4); at any rate, those he did possess were so graphic as to warrant no lenity. The court also acknowledged Hoey's serious health problems, but explained that "the extent of that illness is not such that it could not be adequately treated in a prison facility and is not such that it calls for a departure." See U.S.S.G. § 5H1.4 (a departure may be warranted in the case of "an extraordinary physical impairment" (emphasis added)); United States v. Derbes, 369 F.3d 579, 582 (1st Cir. 2004) (a health-

-13-

related departure might be justified in the unusual case where the defendant "would not get, or was at least unlikely to get, adequate treatment in prison"). Hoey complains that the court did not consider his lack of criminal history beyond assigning him to criminal history category I, yet that is exactly how criminal histories are accounted for under the Guidelines.

Second, the court did discuss the applicability of the 18 U.S.C. § 3553(a) factors, emphasizing the number of images Hoey possessed, "the nature of some of these images, the nature of the children depicted in these images," and the very young age of the victims. No more detailed analysis of these factors is required. United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006) ("[The court] is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision.").

Third, to the extent that Hoey argues these considerations were cursory, we note once more that "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did." Jiménez-Beltre, 440 F.3d at 519; see also Rita v. United States, 127 S. Ct. 2456, 2469 (2007) ("Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write

-14-

more extensively.").  The court heard all of Hoey's concerns, discussed many of them with the attorneys during the hearing, and noted that it had taken them all into account.  This was not an unusual case, and the court's subsequent explanation was sufficient.

The court correctly determined the applicable Guidelines range, provided an adequate explanation for its sentence, and imposed a sentence that is reasonable.  The sentence is affirmed.