The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Douglas L. BROWN, Defendant–Appellant.

No. 08CA1275.

Colorado Court of Appeals, Div. II.

Aug. 4, 2011.

---

John W. Suthers, Attorney General, Ryan A. Crane, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Douglas L. Brown, appeals his judgments of conviction entered on jury verdicts finding him guilty of three counts of sexual exploitation of a child. We affirm.

After executing a search warrant for defendant's home, the police seized numerous items including, as pertinent here, a laptop and an external hard drive for a computer.

On the laptop and hard drive, the police found a photograph and two videos depicting child pornography.

At trial, the People presented the testimony of

- a computer forensics expert who stated that the laptop was registered to defendant and that he found the three images in the active, not deleted, files;

- a detective, qualified as an expert in the detection of child pornography, who stated that the images did not appear to be faked and that the individuals depicted therein were "clearly under the age of eighteen"; and

- a doctor, qualified as an expert in the field of pediatrics and child development, who testified that the individuals in the photo and in one of the videos were about ten to thirteen years old and that the persons in the other video were, at most, sixteen years old.

Defendant denied knowing that the image and videos were on his computer or knowingly downloading child pornography. He testified that over thirty people had access to his computer and could have used his computer for whatever purpose they wanted. He also related that he was aware, beforehand, that the police were coming to his house to execute a search warrant.

Defendant argued that because he knew the police were coming and willingly left his home without attempting to delete the files, the jury should infer that he did not know about, much less was responsible for, the pornographic materials. In addition, defendant argued that the police did not know if the images were tampered with or manipulated, who took them, when they were taken, or the age of the people in them, and thus, they only assumed that the photo and videos depicted real children. In this respect, he asserted that software is available to make "any photograph of anything you want."

The jury found defendant guilty as charged.

## I. Admission of Photograph and Videos

Defendant contends that the trial court erroneously admitted the photo and videos that depicted child pornography over his foundation, authentication, and CRE 403 objections. We are not persuaded.

In the trial court, defendant argued that (1) the prosecutor had the burden to prove that the photo and videos depicted real children; (2) because the prosecutor could not establish that the images accurately represented what was depicted, the images could not be properly authenticated; and (3) displaying the images to the jury would be prejudicial to him because it would "think the worst of him."

The trial court held that the prosecution was not required to prove that the materials depicted real children and that, because "this type of material is the crux of the three counts[,] ... there's really no way around" the prejudice to defendant. Accordingly, it overruled defendant's objections and admitted the evidence.

On appeal, defendant argues that

- the court erroneously concluded that the prosecution did not have to prove that the images depicted real (as opposed to virtual) children;

- the photo and videos were not, in any event, properly authenticated because no witness could say when, where, how, or under what conditions, they were created; and

- he suffered extreme prejudice from the jury's viewing of the images.

We address—and reject—each assertion in turn.

### A. Foundation

A person commits the crime of sexual exploitation of a child if, for any purpose, he or she knowingly possesses or controls any sexually exploitative material. § 18–6–403(3)(b.5), C.R.S.2010.[1] Under the applicable version of the statute, "sexually exploitative material" is a depiction of "a child en-

---

1. A "child" is defined as "a person who is less than eighteen years of age." § 18–6–403(2)(a), C.R.S.2010.

gaged in, participating in, observing, or being used for explicit sexual conduct." *See* Ch. 139, sec. 3, § 18–6–403(2)(j), 1998 Colo. Sess. Laws 398.[2]

■ Section 18–6–403 prohibits only the use of real children in sexually exploitative material. *People v. Campbell*, 94 P.3d 1186, 1190 (Colo.App.2004). Accordingly, to convict a defendant of sexual exploitation of a child under section 18–6–403, the prosecution must prove beyond a reasonable doubt that the image(s) depict real children, *Campbell*, 94 P.3d at 1190, and the trial court erred in concluding otherwise. Nonetheless, we can affirm the introduction of the evidence if, despite this error, it was properly admitted. *See People v. Quintana*, 882 P.2d 1366, 1375 (Colo.1994) (a defendant's conviction will not be reversed if a trial court reaches the correct result although by an incorrect analysis).

■ Here, the evidence was admissible despite the trial court's misconception of the law. This follows because even where, as in Colorado, the government must prove that the images are of actual children, it is not required to present evidence of a child's identification or expert testimony establishing that the image depicts a real child. *See United States v. Sims*, 428 F.3d 945, 957 (10th Cir.2005); *see also United States v. McNealy*, 625 F.3d 858, 865 (5th Cir.2010) (no requirement that the government present expert testimony or additional evidence to establish that the image depicts a real child); *United States v. Wilder*, 526 F.3d 1, 11 (1st Cir.2008) (the government is not required to produce a technology expert to prove that an image contains real children); *United States v. Hoey*, 508 F.3d 687, 691 (1st Cir.2007) (the prosecution is not required to produce expert testimony to establish that the depicted child is real); *United States v. Salcido*, 506 F.3d 729, 733–34 (9th Cir.2007) (same).

■ Where, as here,
the relevance of evidence depends upon the fulfillment of a condition of fact, neither the trial court nor a reviewing court serves as the trier of fact. Rather, the rules of evidence require the trial court to admit the evidence upon or subject to the introduction of evidence sufficient to support a finding by the jury of that condition of fact. CRE 104(b) (Relevancy conditioned on fact). Only if there is no evidence from which reasonable jurors could find the condition of fact should the challenged evidence be rejected as irrelevant.

*People v. Summitt*, 132 P.3d 320, 331 (Colo. 2006) (Coats, J., concurring in part and in the judgment); *see also People v. Garner*, 806 P.2d 366, 371 (Colo.1991) ("[I]n resolving [CRE 104(b)] questions the judge merely determines as a preliminary matter whether the foundation evidence is sufficient to support a reasonable finding by a jury of the fulfillment of the condition. If such a *prima facie* showing is made, the trial court admits the evidence for the jury's consideration.") (citation omitted); *Burlington Northern R.R. Co. v. Hood*, 802 P.2d 458, 468 (Colo.1990) ("Only if the proffered evidence, considered in its total context, is manifestly insufficient to sustain a reasonable finding by the jury of the conditional fact should the trial court rule the evidence inadmissible.").

■ Here, there was sufficient evidence presented in this case upon which the jury could have found that the children depicted in the images were real. That evidence consisted of:

- the images themselves, which, in our view, a reasonable jury could perceive to depict real children. *See Sims*, 428 F.3d at 957 (juries often will be able to distinguish between real and virtual images); *People v. Normand* [215 Ill.2d 539, 294 Ill.Dec. 637], 831 N.E.2d 587, 596 (Ill.2005) ("a trier of fact is capable of determining whether real children were used in pornographic images simply by viewing the images themselves"); and

- the supporting testimony from a detective, who opined that the images did not appear faked, and from a doctor, who focused on the physical characteristics of sexual development, the body and hand structure, and the facial fea-

---

2. Defendant was also convicted of possession with intent to distribute methamphetamine. However, he does not challenge that conviction on appeal.

tures (including lack of facial hair) of the persons depicted in the images.

In light of the foregoing, the images were not inadmissible on the ground that they were not proved to depict real children.

### B. Authentication

■ "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a); see People v. Crespi, 155 P.3d 570, 574 (Colo.App.2006) (trial court should admit physical evidence if a reasonable jury could decide that it is what the proponent claims it to be). Any question as to the authenticity of evidence is properly decided by the jury. Crespi, 155 P.3d at 574.

"Objects offered as playing an actual and direct part in the incident or transaction giving rise to a trial ... are commonly called 'real' evidence. Such objects are treated as independent substantive sources of evidence because the trier of fact may draw inferences from the objects themselves about some fact of consequence." 2 Kenneth S. Broun, McCormick on Evidence § 213, at 11 (6th ed. 2006). Because the objects at issue here—the images found on defendant's computer devices—are a direct part of the charges against defendant, they are properly characterized as real evidence.

■ To authenticate real evidence, the proponent need only establish a chain of custody, that is, "that the evidence was involved in the incident and that the condition of the evidence at trial is substantially unchanged." People v. Herrera, 1 P.3d 234, 240 (Colo.App.1999). The People did not, as defendant argues on appeal, have to addition-

ally present a person who was on the scene when the images were created to testify that the images fairly and accurately depicted the events portrayed therein.[3]

At trial, the computer forensics expert testified that, after receiving the seized computer equipment from the police, he gave each piece of evidence an individualized bar code for identification purposes and made a copy of each hard drive. He then examined the copied hard drives for evidence that would be relevant to defendant's case and compiled that evidence on a "finding CD" for the police. He identified

- exhibit 4 as the CD that contained the photo and videos that he had found on defendant's computer and hard drive; and

- three other exhibits—a copy of the photo and two CD's containing the videos—as "in the same condition as they were when [he] found them off of the hard drive and [laptop]" and "accurate representation[s]" of what was on exhibit 4.

In our view, the expert's testimony was sufficient to show that the images were involved in (indeed, were the critical evidence of) the crimes for which defendant was charged and were substantially unchanged at the time of trial. Therefore, they were admissible as properly authenticated real evidence. See Salcido, 506 F.3d at 732 (government properly authenticated videos and still images found on the defendant's hard drives and CD–ROM by presenting evidence as to the chain of custody, specifically, how the images were retrieved from the defendant's computers); United States v. Berringer, 601 F.Supp.2d 976, 980 (N.D.Ohio 2008) (to au-

3. This "fair and accurate representation" standard is reserved for demonstrative evidence. See People v. Richardson, 58 P.3d 1039, 1045 (Colo. App.2002) (to be admissible, demonstrative or illustrative evidence must be shown to be reasonably accurate and correct); 2 McCormick on Evidence § 214, at 14–15 ("foundation [for demonstrative evidence] differs considerably from the requirements for authenticating real evidence" because "the theory justifying its admission is that the item is a fair and accurate representation of relevant testimony or documentary evidence otherwise admitted in the case"); com-

pare Normand, 294 Ill.Dec. 637, 831 N.E.2d at 595 (unlike photos used as demonstrative evidence, the photos taken from the defendant's computer were themselves the evidence of his offense), with Moreland v. Bradshaw, 635 F.Supp.2d 680, 708 (S.D.Ohio 2009) (crime scene photos are demonstrative evidence), Banks v. State, 728 P.2d 497, 503 (Okla.Crim.App.1986) (crime scene photos are demonstrative evidence), and State v. Lafferty, 20 P.3d 342, 367 (Utah 2001) (videotape of crime scene was demonstrative of, among other things, the circumstances of the crime).

thenticate images found on computers or other electronic storage media found at the defendant's home, the government need simply offer testimony establishing that the images were found on computers taken from his residence).[4]

### C. Unfair Prejudice

■ Even relevant evidence is excludable if it is "unfairly" prejudicial, that is, if it has an "undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *People v. James,* 117 P.3d 91, 93–94 (Colo. App.2004) (quoting *Masters v. People,* 58 P.3d 979, 1001 (Colo.2002)). For the evidence to be excludable, however, the danger of unfair prejudice must substantially outweigh the legitimate probative value of the evidence. CRE 403.

■ A trial court is given broad discretion to determine the relevance and relative probative value and potential unfair prejudice of evidence, and we will overturn a trial court's decision to admit evidence only if the decision was arbitrary, unreasonable, or unfair. *James,* 117 P.3d at 94.

■ Here, the images were direct proof of an essential element of the charged crimes, and the fact that the nature of the charges may be prejudicial to defendant does not justify exclusion of such relevant evidence. *Cf. People v. District Court,* 869 P.2d 1281, 1286 (Colo.1994) (evidence is not excludable because of the damage (or prejudice) to a defendant's case that results from its legitimate probative force).

Accordingly, we perceive no error in the admission of the images into evidence.

### II. Sufficiency of the Evidence

Defendant contends that there was insufficient evidence presented that the images depicted real children and, thus, that the evidence was insufficient to sustain his convictions. We disagree.

We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain defendant's convictions. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005).

When examining the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Grant,* 174 P.3d 798, 811 (Colo.App.2007). A modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt, *People v. Torres,* 224 P.3d 268, 277 (Colo.App.2009); however, "[i]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element." *Grant,* 174 P.3d at 812; *cf. id.* ("where reasonable minds can differ, the evidence is sufficient to sustain a conviction").

■ "[A] trier of fact is capable of determining whether real children were used in pornographic images simply by viewing the images themselves." *Normand,* 294 Ill.Dec. 637, 831 N.E.2d at 596; *see also Sims,* 428 F.3d at 957 (juries often will be able to distinguish between real and virtual images, and "where no evidence suggests that the images are anything other than real, the government need offer no supporting evidence beyond the images themselves") (quoting *United States v. Harms,* 371 F.3d 1208, 1213 (10th Cir.2004)).

■ We have examined the images, and they appear to depict real persons, who a doctor opined, based on certain physical characteristics, were children. Further, a detective opined that the images did not appear fake, and there was no evidence that the images were fake or of virtual children.

---

4. We note that the images presented at trial were actually duplicates of files found on defendant's laptop and hard drive. Defendant did not, however, argue that the images were not accurate representations of the originals. *See* CRE 1003

("A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.").

Under these circumstances, we conclude that the evidence was sufficient to permit the jury, as the finder of fact, to determine that the prosecution had met its burden of proving that the individuals depicted were real children. *See Wilder*, 526 F.3d at 11 (evidence was sufficient where (1) the jury had the images as well as the testimony of a medical expert, which, among other things, focused on facial features, physical characteristics of sexual development, and anatomy and musculature of those depicted; and (2) the only evidence from defendant was the doctor's statement that she had no experience with computer photo imagery).

Thus, defendant is not entitled to have his convictions vacated on insufficiency of evidence grounds.

### III. Expert Witness Testimony

We also reject defendant's contention that the trial court's admission of a detective's expert testimony warrants reversal.

Over defendant's objection, the trial court qualified the detective as an expert in detecting child pornography based on the following evidence:

- the detective had been in law enforcement for approximately nine years and had been a detective for almost four years;

- he was a detective in the child abuse unit for over two years, during which time he took a one-week class about "sexual abuse investigations and physical abuse investigations with children";

- about half the classes he took during that one-week session were devoted to investigating sexual exploitation of children cases;

- while in the child abuse unit, he handled a "dozen or so" child pornography investigations; and

- from his classes and his experience with child pornography classes, he learned that "in order to definitively say that a child is under 18, [he] look[s] for puberty, [that is,] has the child hit that pubescent range yet," and that to determine whether a person is prepubescent, he looks to "the physical char-acteristics of the ... person [including] facial hair, pubic hair, Adam's apple, [and] defined muscle tone" because "[t]hose kind of things will tell you ... [that] this person has hit puberty or this person has not."

The detective was permitted to testify that, in his opinion, the persons in the two videos appeared to be "way under the age of 18" and the individual in the photo was "clearly under the age of 18." On appeal, defendant argues that (1) the prosecutor violated Crim. P. 16 by not endorsing the detective as an expert witness prior to trial; and (2) the detective was not qualified to offer specialized knowledge in detecting child pornography. Both of these contentions were preserved by defendant's objections in the trial court.

### A. Endorsement of Expert

Crim. P. 16(1)(a)(III) requires the prosecution to disclose reports or statements made by experts in connection with the case. Neither it, nor any other provision of Crim. P. 16, however, expressly requires the prosecution to endorse a witness as an expert when that witness has not provided any written reports or statements in his or her expert capacity.

In *People v. Greer*, 262 P.3d 920, 930 (Colo. App.2011), a division of this court held that, where no expert report or statement has been provided, the Rules of Criminal Procedure do not compel the disclosure of experts unless and until the defendant requests and justifies specific discovery relating thereto. *See id.* at 930 (holding that although "it might have been a better practice for the prosecution to specifically identify ... an expert witness, ... Crim. P. 16 [does not] require such an endorsement").

Before *Greer*, both the supreme court and another division of this court had recognized that the admission of unendorsed expert testimony from police officers subverts pretrial disclosure and discovery requirements. *See People v. Stewart*, 55 P.3d 107, 123 (Colo. 2002) (principle acknowledged); *People v. Veren*, 140 P.3d 131, 140 (Colo.App.2005) ("Because [the] defendant did not have the

benefit of pretrial disclosure of the officers' expert testimony and the bases of their opinions, he did not have the opportunity to evaluate the testimony in advance of trial or to obtain his own expert witness."). As such, *Stewart* and *Veren* suggest that, notwithstanding the precise text of the rule, pretrial endorsement of an expert might be required, regardless of whether the expert prepared a report or statement.

■■■ We need not, however, reconcile the apparent tension between *Greer*, on the one hand, and *Stewart* and *Veren*, on the other. A conviction will not be reversed for failure to comply with discovery rules absent a demonstration of prejudice. *Salazar v. People*, 870 P.2d 1215, 1220 (Colo.1994). Defendant's failure to request a continuance belies any claim that he was surprised or prejudiced by the detective's testimony. *See Chambers v. People*, 682 P.2d 1173, 1180 (Colo.1984) (any claim that prejudice resulted from the prosecutor's failure to disclose an expert report "is convincingly belied by the defendant's failure to seek a continuance"); *People v. Anderson*, 837 P.2d 293, 299 (Colo. App.1992) ("[Any] claim by the defendant at the appellate level that he was unfairly surprised and unable to prepare adequately for cross-examination is thoroughly discredited by his failure to move for a continuance at the trial level.") (quoting *People v. Graham*, 678 P.2d 1043, 1047–48 (Colo.App.1983)).

### B. Detective's Qualifications

■■ "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." CRE 702. A qualified expert need not "hold a specific degree, training certificate, accreditation, or membership in a professional organization." *Golob v. People*, 180 P.3d 1006, 1012 (Colo.2008) (quoting *Huntoon v. TCI Cablevision of Colo., Inc.*, 969 P.2d 681, 690 (Colo.1998)). He or she can be qualified by any one of the five factors listed in CRE 702: knowledge, skill, experience, training, or education. *Golob*, 180 P.3d at 1012.

■■ Trial courts possess broad discretion to admit expert testimony in criminal cases. To establish that a court has abused its discretion in admitting expert evidence, the court's decision must be shown to be manifestly arbitrary, unreasonable, or unfair. *See Meier v. McCoy*, 119 P.3d 519, 521 (Colo. App.2004) (assessing whether a witness was qualified to render an expert opinion); *People v. Watson*, 53 P.3d 707, 711 (Colo.App. 2001) (same).

■ Here, we cannot say that the court's qualification of the detective as an expert was manifestly unreasonable, arbitrary, or unfair, in light of the detective's (1) two years with the child abuse unit; (2) classes on investigating sexual exploitation of children cases; and (3) previous handling of approximately a dozen child pornography investigations.

■ Moreover, any error in qualifying the detective as an expert was rendered harmless when the doctor testified in detail as to her opinion that the individuals in the images were under the age of eighteen. *See People v. Jaramillo*, 183 P.3d 665, 669 (Colo. App.2008) (any error in admitting the contested testimony was harmless because it was cumulative of other testimony not challenged on appeal); *People v. Allee*, 77 P.3d 831, 835 (Colo.App.2003) (same).

### IV. Prosecutorial Misconduct

We also reject defendant's contention that reversal is warranted because of prosecutorial misconduct in closing argument.

■ "Closing argument must be confined to the evidence admitted at trial, the inferences that can reasonably and fairly be drawn from it, and the instructions of law submitted to the jury." *People v. Rojas*, 181 P.3d 1216, 1223 (Colo.App.2008).

■ "A prosecutor may comment on the evidence admitted at trial, the reasonable inferences that can be drawn from the evidence, and the instructions given to the jury," and "[h]e or she may ... point to circumstances that raise questions about, or cast doubt on, a witness's testimony, and may draw reasonable inferences from the evi-

dence as to the credibility of witnesses." *People v. Welsh,* 176 P.3d 781, 788 (Colo.App. 2007). In doing so, he or she may ordinarily "employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance." *People v. Collins,* 250 P.3d 668, 678 (Colo.App.2010) (quoting *Allee,* 77 P.3d at 837).

▮ A prosecutor may not, however, misstate the evidence, use arguments calculated to inflame the passions and prejudices of the jury, or assert a personal opinion as to the guilt of the defendant or the credibility of witnesses. *People v. Gladney,* 250 P.3d 762, 769 (Colo.App.2010).

▮ "Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury." *People v. Geisendorfer,* 991 P.2d 308, 312 (Colo.App.1999).

Here, defendant asserts that the prosecutor made comments which asserted facts not in evidence, misstated the law, and expressed his personal opinion on the evidence and defendant's credibility. Because, however, he did not object at trial to any of the prosecutor's remarks, our review is only for plain error. *People v. Smith,* 77 P.3d 751, 760 (Colo.App.2003).

▮ Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Strock,* 252 P.3d 1148, 1152–53 (Colo.App.2010). In order to qualify as such, the misconduct must be flagrantly, glaringly, or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Weinreich,* 98 P.3d 920, 924 (Colo.App.2004), *aff'd,* 119 P.3d 1073 (Colo.2005). Improper closing argument rises to this level if its probable effect is a verdict based on bias and prejudice rather than on the relevant facts and applicable law. *People v. Mandez,* 997 P.2d 1254, 1268 (Colo.App.1999).

▮ Here, we conclude that plain error did not occur:

(1) Contrary to defendant's assertion, in taking the position that the images depicted real children, the prosecution did not argue facts not in evidence or express a personal opinion about the evidence. The prosecution's position was a reasonable inference drawn from the images and testimony in the case.

(2) The prosecution did not misstate the law, lower its burden of proof, or contradict instructions about the necessity of real children being depicted in the images; when read in context, the prosecutor's remarks did not dispute that requirement but, rather, any perceived requirement to prove either the identity of the children or that the activity depicted in the images was real as opposed to simulated. In these respects, the prosecutor's remarks were correct.[5]

The prosecution's suggestion that the jury had to believe either all or none of defendant's testimony was not plainly erroneous in light of the court's instruction that the jury may believe all, part, or none of a witness's testimony. *See People v. Butler,* 224 P.3d 380, 387 (Colo.App.2009) (jurors are presumed to have understood and followed the court's instructions, absent a showing otherwise).

(4) In our view, the prosecutor's question, "Who's the pathological liar in this courtroom?" was not, as defendant asserts, an overt expression of personal belief about his credibility. The prosecutor asked that rhetorical question after emphasizing that (1) under the evidence, defendant's theory of how the child pornography got on his laptop and hard drive was not believable, and (2) while testifying, defendant had taken no responsibility for a prior assault conviction, and, instead, called the victim of that assault a pathological liar.

---

5. Nor did the prosecution, in making this point, commit plain error by stating, "A person under the age of 18 who is shown ... with erotic nudity ... [and] erotic fondling. They're actors. All those kids are actors. Paid to play the role. It doesn't matter. In the end it's still child pornography." To the extent that this remark referenced facts not in evidence, we do not regard it as flagrantly or glaringly improper, much less prejudicial.

Although we find the comment improper, it is certainly not flagrantly, glaringly, or tremendously so. *See People v. Tillery*, 231 P.3d 36, 45 (Colo.App. 2009) *(cert. granted* May 24, 2010) (no plain error occur where, among other things, the improper comments made up a small part of the prosecution's closing argument); *see also Domingo–Gomez v. People*, 125 P.3d 1043, 1053 (Colo.2005) ("Comments that were 'few in number, momentary in length, and were a very small part of a rather prosaic summation' do not warrant reversal under the plain error standard." (quoting *People v. Mason*, 643 P.2d 745, 753 (Colo.1982))); *cf. Crider v. People*, 186 P.3d 39, 43 (Colo.2008) (prosecutor's improper use of "lie" was harmless, in part because it was expressly linked to the evidence undermining the defendant's theory).

For these reasons, we conclude that reversal is not warranted based on prosecutorial misconduct.

### V.  Cumulative Error

Finally, we reject defendant's argument that reversal is required under the cumulative error doctrine.  In our view, any errors that occurred did not, singly or cumulatively, deprive defendant of a fair trial.  *See Grant*, 174 P.3d at 813.

The judgments of conviction are affirmed.

WEBB and STERNBERG *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and