23CA1870 Peo v Edwards 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1870
Adams County District Court No. 22CR423
Honorable Jeffrey Smith, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Edwards,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Kuhn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Arielle Roter, Deputy State
Public Defender, Brighton, Colorado, for Defendant-Appellant

¶ 1    Defendant, David Edwards, appeals the judgment of conviction entered on jury verdicts finding him guilty of third degree assault and false imprisonment.  We affirm.

## I.    Background

¶ 2    Edwards and the victim, Julie Sandoval, had been dating for three and a half years when the incident giving rise to the charges occurred.  Sandoval lived with Edwards in his apartment, but she continued to pay rent for her own apartment elsewhere.  One night during dinner with Edwards, Sandoval called a longtime male friend.  This upset Edwards and he went to the bedroom.  Once Sandoval finished the call, she went to the bedroom to "give [Edwards] affection," but he pushed her away.  Sandoval asked Edwards why he was "being mean."  He pushed her away again, and her body hit the dresser.  Sandoval and Edwards gave two very different accounts of what happened next.

¶ 3    According to Sandoval, after Edwards had pushed her twice, she gathered her belongings in a trash bag so she could return to her own apartment.  When she tried to leave, Edwards grabbed her by her shoulders, turned her around, and started choking her.  Edwards released her and she tried to run toward the bedroom, but

Edwards grabbed her again.  He interlocked his fingers with hers and twisted them back toward her body.  Sandoval managed to get away from Edwards, and she ran to the bedroom to escape out of the window.  Edwards came into the bedroom and threw a television at Sandoval, which she dodged.  Sandoval then laid down on the bed.  Edwards got on top of her, threw her legs over her head, and choked her, first with his forearm and then with both of his hands.  Once Edwards let her go, he went to the living room to clean up.  Sandoval remained in the bedroom for about three minutes until she saw that Edwards was "calm."  She then grabbed her belongings, left the apartment, and knocked on three neighbors' doors.  The third neighbor answered, and she told him to call the police.  Sandoval also called the police herself.  Shortly thereafter, police arrived and took Sandoval to the hospital, where a nurse evaluated and treated her injuries.

¶ 4     According to Edwards, no physical altercation occurred.  Instead, Sandoval became hysterical during their argument and couldn't calm down.  He wanted her to leave, packed up her belongings, and placed them in a bag outside the door of the

apartment.  Sandoval wouldn't leave, so he got in his car and left his apartment.

¶ 5    The People charged Edwards with second degree assault, third degree assault, and false imprisonment, all as acts of domestic violence given Edwards and Sandoval's relationship.  At trial, Edwards' defense was that Sandoval fabricated her account of the assault — that is, there was no assault.

¶ 6    The jury found Edwards guilty of third degree assault and false imprisonment.  The district court sentenced him to two years of probation and mandatory domestic violence evaluation and treatment.

## II.    Discussion

¶ 7    Edwards contends that we must reverse his convictions for three reasons: (1) the district court erred by admitting the statements Sandoval made to a forensic nurse examiner (FNE) on the night of the incident; (2) the court erred by allowing the FNE to give "declarative and conclusory" testimony about Sandoval's injuries; and (3) even if neither of these errors individually requires reversal, their cumulative prejudicial effect does.  We address, and reject, these contentions in turn.

### A. Sandoval's Statements to the FNE

¶ 8 Edwards first contends that the district court abused its discretion by admitting People's Exhibit 5, a purportedly verbatim transcription of Sandoval's statements to the FNE about the incident. We disagree.

#### 1. Standard of Review

¶ 9 We review a district court's evidentiary rulings for an abuse of discretion. *People v. Martinez*, 2020 COA 141, ¶ 25. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Id.*

#### 2. Additional Background

¶ 10 The prosecution called the FNE who examined Sandoval to testify as an expert witness. In examining Sandoval, the FNE took a "history" of what happened to "guide [her] assessment and guide [her] diagnosis and treatment." Invoking CRE 803(4), which excepts statements made for the purposes of medical diagnosis and treatment from CRE 802's hearsay bar, the prosecutor moved to admit this written history as Exhibit 5. The exhibit includes the following statements by Sandoval:

He strangled me, um, he pushed me into the coffee table and I hit the coffee table with my left side and went to the floor. And he grabbed me when I was on the bed he was choking me there again. He put my legs up, I was trying to curl into a ball, I couldn't breathe. When I was crying he was making fun of me. And then he grabbed my hands, he was trying to stop me, I was trying to leave. He grabbed my fingers and was twisting them. He hurt them. I ran out of the house and was banging on the neighbor's door. I went to the hall and people living there, I asked them to call the cops. I said 'my boyfriend is hitting me.' He said 'ok' and then closed the door. And that's when I saw [Edwards]. He threw my bags in the front yard and then he jumped in his car and drove down the street.

¶ 11    Defense counsel objected to the admission of Exhibit 5. The court discussed the admissibility of the exhibit with the parties outside the jury's presence. Defense counsel argued that the statements in the exhibit were "less focused on the medical issues at hand" and "not proper for [the FNE] to go through" because they constituted a description of "the incident," not a "medical history." Thus, counsel continued, the exhibit was inadmissible under CRE 803(4). The prosecutor countered that the statements were prior consistent statements, citing *People v. Miranda*, 2014 COA 102, in

support of their admissibility for that reason, in addition to their admissibility under CRE 803(4).

¶ 12　　The court admitted the entire exhibit, ruling that "several statements" fell within the medical diagnosis and treatment exception of CRE 803(4) and that all the statements were admissible as prior consistent statements "to rehabilitate Ms. Sandoval's credibility." The court reasoned that "her credibility ha[d] been generally attacked in the case in opening statements" because defense counsel argued the case was "a credibility case and that this did not happen" — that is, "she made up the story of strangulation."

### 3.　　Analysis

¶ 13　　Edwards contends that the exhibit wasn't admissible because (1) Sandoval's statements therein didn't fall within the medical diagnosis and treatment hearsay exception and (2) Sandoval's character for truthfulness was never attacked.

¶ 14　　Under CRE 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as

6

reasonably pertinent to diagnosis or treatment" are excepted from CRE 802's bar to the admission of hearsay. *See People v. Jaramillo*, 183 P.3d 665, 669 (Colo. App. 2008). But statements attributing fault or identifying an assailant aren't admissible under Rule 803(4), unless such information is necessary for treatment. *People v. Allee*, 77 P.3d 831, 834-35 (Colo. App. 2003).

¶ 15 We conclude that most of the first half of the transcription (everything except, "When I was crying he was making fun of me") was admissible under Rule 803(4). Sandoval's description of how she incurred her injuries was relevant to medical diagnosis and treatment because the FNE needed to know "where [she] should be looking, and what type of injuries [she] should be looking for." *See Kelly v. Haralampopoulos*, 2014 CO 46, ¶ 24 ("[I]f a statement is offered for the purpose of determining the nature, source, or cause of a patient's medical condition, it falls within the language of Rule 803(4) . . . .").

¶ 16 But the rest of the transcription — namely, "When I was crying he was making fun of me," and everything following the statement, "He hurt them" — wasn't admissible under Rule 803(4). Sandoval's description of leaving the house and knocking on neighbors' doors

7

and her reference to Edwards as the person who had hit her weren't statements made for the purpose of receiving medical diagnosis or treatment. Rather, Sandoval made these statements for the purpose of describing her version of the incident.

¶ 17    Nonetheless, the district court didn't abuse its discretion by admitting the exhibit because all of Sandoval's statements in the exhibit were admissible as prior consistent statements.

¶ 18    "[P]rior consistent statements may be used for rehabilitation when a witness's credibility has been attacked, as such statements are admissible outside CRE 801(d)(1)(B)." *Miranda*, ¶ 15 (quoting *People v. Eppens*, 979 P.2d 14, 21 (Colo. 1999)). The rationale for this rule is that, where an attack on credibility is general and not limited to specific facts, "the jury should have access to all the relevant facts, including consistent and inconsistent statements." *People v. Elie*, 148 P.3d 359, 362 (Colo. App. 2006); *see People v. Allgier*, 2018 COA 122, ¶ 47 (because defense counsel generally attacked the victim's credibility by saying in opening statement that the victim had given inconsistent versions of events, and had cross-examined the victim as to details of those inconsistencies, the victim's prior statements to a police officer were admissible); *People*

*v. Manzanares*, 2020 COA 140M, ¶¶ 33-34 (the trial court didn't abuse its discretion by admitting notes as a prior consistent statement because defense counsel "launched a general and sustained attack on [the prosecution witness's] credibility that was not limited to specific facts"); *People v. Clark*, 2015 COA 44, ¶¶ 132-133 (the trial court didn't abuse its discretion by admitting a witness's videotaped interview after defense counsel attacked that witness's credibility because "admission of the entire video was proper to give the jury the full picture of what he had said to the police").

¶ 19    Sandoval's statements were admissible as prior consistent statements because (1) the defense's theory was that Sandoval had fabricated her version of events and (2) that theory rested in large part on alleged inconsistencies in Sandoval's story. During her opening statement, defense counsel generally attacked Sandoval's credibility and said that Edwards never assaulted Sandoval. On cross-examination of Sandoval, defense counsel focused on various inconsistencies in Sandoval's memory, including the number of times she was strangled, where in the apartment the assault

happened, who packed her belongings into the trash bag, and whether anyone answered the door when she knocked for help.

¶ 20 Edwards' reliance on *People v. Serra*, 2015 COA 130, for the proposition that questioning the credibility of and identifying inconsistencies in a witness's accounts doesn't constitute an attack on the witness's character is misplaced. *Serra* addressed a different question than the one before us. The division in *Serra* determined whether *evidence of a victim's character for truthfulness* could be admitted under CRE 608 when the defense hadn't yet attacked her character for truthfulness. *Id.* at ¶¶ 65-67. But CRE 608 isn't implicated in this case. While the defense generally attacked Sandoval's credibility and recollection of the incident, defense counsel didn't present any evidence relating to her propensity to be untruthful, and the prosecution didn't offer the statements as evidence that Sandoval had a truthful character.

¶ 21 In sum, we conclude that the court didn't abuse its discretion by admitting Exhibit 5.

## B. Expert Testimony

¶ 22 Next, Edwards contends that the district court reversibly erred by allowing inadmissible expert testimony. Again, we disagree.

10

### 1. Standard of Review and Applicable Law

¶ 23 We review a district court's evidentiary rulings regarding the admissibility of expert testimony for an abuse of discretion. *People v. Baker*, 2019 COA 165, ¶ 12, *aff'd*, 2021 CO 29. Where, as in this case, counsel didn't object to the admission of the challenged evidence, we review any error for plain error. *People v. Hagos*, 2012 CO 63, ¶ 14. Plain error is error that is obvious and that so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Id.* "The defendant has the burden of showing that any error was plain." *People v. Carter*, 2021 COA 29, ¶ 49.

¶ 24 Under CRE 702, a witness may testify as an expert if she has "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." While testimony in the form of an opinion isn't objectionable merely because it embraces an ultimate issue to be decided by the jury, "an expert witness can't tell the jury what result to reach or form conclusions for the jurors that they are competent to reach on their own." *Baker*, ¶ 14.

## 2.  Additional Background

¶ 25    The FNE testified as an expert in forensic examination and strangulation.  During direct examination, the prosecutor asked the FNE whether the injuries she observed on Sandoval were "consistent or inconsistent with what Ms. Sandoval stated." Defense counsel objected on the basis that it was up to the jury, not the FNE, to determine whether the injuries were consistent or inconsistent with Sandoval's accusation.  The court sustained the objection.  The prosecutor and defense counsel then approached the bench and discussed this line of questioning with the court. The court said these kinds of questions improperly bolstered Sandoval's credibility.  It told the prosecutor that he could ask generally whether certain injuries were consistent with certain types of assault but that the FNE couldn't opine whether certain injuries were consistent with Sandoval's report of what Edwards had done.

¶ 26    Once direct examination resumed, the prosecutor asked the FNE whether the injuries to Sandoval's thumb were "consistent or inconsistent with someone who may have had their hands manipulated."  The FNE said that they were consistent, and defense counsel objected again.  The court sustained the objection.  The

12

prosecutor then asked the FNE whether the bruising on Sandoval's hand was "inconsistent with an injury that could have occurred that day." Defense counsel objected, and the court overruled the objection. The FNE answered, "In my opinion it is consistent with Ms. Sandoval's history with having her hand hurt in an assault." Defense counsel didn't object to the answer.

¶ 27 During a discussion with the court over the subsequent lunch break, defense counsel asked the prosecutor to advise the FNE on the limits of her testimony. The court said that the FNE could answer "yes" or "no" to whether Sandoval's injuries were consistent or inconsistent with an injury that could have occurred the day of the alleged assault, but the court acknowledged that defense counsel hadn't objected to the FNE's answer. The court warned that, if the FNE testified beyond that limit, the court would hear objections. Defense counsel didn't ask the court for any remedy for the FNE's previous answer, and the prosecutor didn't ask a similar question later.

### 3. Analysis

¶ 28    Edwards argues that the FNE's answer — "In my opinion it is consistent with Ms. Sandoval's history with having her hand hurt in an assault" — was inadmissible expert testimony.

¶ 29    This argument is waived because defense counsel didn't object to the FNE's answer and, when counsel subsequently discussed the issue with the court, didn't request a remedy.[1]

¶ 30    Waiver is the "*intentional* relinquishment of a *known* right or privilege." *Forgette v. People*, 2023 CO 4, ¶ 28 (quoting *People v. Rediger*, 2018 CO 32, ¶ 39).  A party's waiver doesn't need to be express; it may be implied.  *People v. Garcia*, 2024 CO 41M, ¶ 29. "[A]n implied waiver occurs when a party's conduct demonstrates the intent to relinquish the right or when the party acts inconsistently with the asserted right."  *Id.*

¶ 31    Counsel made two prior objections to the prosecution's line of questioning regarding the consistency of Sandoval's injuries with her statements, which the court sustained.  When the prosecutor

---

[1] We read Edwards' briefs as challenging the FNE's last answer but not the question to which the answer was given.  At trial, defense counsel objected to the question, not the answer.

reframed the question in a way that didn't implicate Sandoval's statements, counsel objected to the question, the court overruled counsel's objection, and the FNE answered the prosecutor's question. Counsel didn't object to the FNE's answer. Moreover, defense counsel later indicated that she was fully aware of the issue but didn't ask the court to strike the answer or take any other action. *See Forgette*, ¶ 34 (where counsel was fully aware of the issue (a sleeping juror) but didn't ask the court to take any action to address it, the issue was waived).

¶ 32 But even assuming defense counsel didn't waive the issue, we conclude that reversal isn't required because if the district court erred by admitting the FNE's testimony, and the error was obvious, Edwards' contention would still fail the last prong of the plain error test — prejudice — for a combination of reasons.

¶ 33 First, defense counsel extensively cross-examined the FNE. *See People v. Wittrein*, 221 P.3d 1076, 1082 (Colo. 2009) (no plain error when an expert was subject to cross-examination and testified that she didn't know with "one hundred percent certainty" whether the victim was telling the truth). On cross, the FNE agreed that she "[could not] personally say how [Sandoval] got any of her injuries."

She also testified that she couldn't be certain that Edwards' hands caused Sandoval's injuries because she wasn't there when the incident occurred.

¶ 34     Second, there was other substantial and properly admitted evidence proving that Edwards assaulted Sandoval. *See People v. Cook*, 197 P.3d 269, 276 (Colo. App. 2008) (considering the "strength and breadth of the properly admitted evidence" to determine whether an investigating officer's testimony so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction). This evidence — the admissibility of which Edwards doesn't challenge on appeal — includes Sandoval's testimony; her 911 call; photos of her injuries; and the investigating officer's testimony, photographs of the bedroom, and body camera video.

¶ 35     Third, the fact defense counsel never requested a remedy for the FNE's testimony indicates that counsel didn't view it as substantially prejudicial. *See Martinez*, ¶ 75 (no plain error in allowing certain expert testimony, in part because defense counsel failed to object to the admissibility of expert testimony, which "belies any claim that he was surprised or prejudiced" by the

testimony (quoting *People v. Brown*, 313 P.3d 608, 617 (Colo. App. 2011))).

¶ 36　　Thus, even if the court erred by allowing this testimony, reversal isn't required.

## C.　Cumulative Error

¶ 37　　Lastly, Edwards contends that the cumulative effect of the district court's errors requires reversal.　Having found only one possible error relating to the FNE's testimony, we reject this contention.　*See People v. Shanks*, 2019 COA 160, ¶ 76 (for the cumulative error doctrine to apply, numerous errors must have been committed, not merely alleged).

## III.　Disposition

¶ 38　　The judgment is affirmed.

JUDGE KUHN and JUDGE MOULTRIE concur.